## Goodman & Wife vs. Moore.

The probate court has no right to pass any order, or render any judgment binding the widow, as to the extent of her interest in the proceeds of the sale of the real estate of her husband, when she is not before the court.
As against the infant heirs of her husband the widow is entitled, as dower, to one-

third of the lands of her husband, and to the use and occupancy of the dwelling house and farm until dower is assigned her, or, if the lands are sold, to the use of one-third of the proceeds. But as against the heirs of age, where the land has been sold under an agreement between them and her that she shall have a specified sum for her dower interest, she is entitled to enforce the agreement in proportion to their interest in the proceeds of sale: or the land having been surrendered to the administrator of the husband in payment of a balance due on the purchase, she is entitled to have dower assigned her in the land with one-third of the rents and profits.

A person having no interest in the subject of the suit—against whom *no relief is asked, and no decree can be rendered*—should not be made a party.

*Appeal from Union Circuit Court in Chancery.*

Hon. Shelton Watson Circuit Judge.

Lee, for the appellant.

No decree can be passed against a party who claims no interest in the subject in controversy, and against whom no decree is prayed. *Adams Eq.* 312, 314; 19 *Ark.* 607.

An order of the probate court cannot affect one who has no notice of the proceeding. *Gould's Dig. Ch.* 4, *sec.* 129.

Demandant may either claim an assignment of dower from an innocent purchaser, or an equivalent in money when for the interest of all. *Willard's Eq.* 699, 700; 3 *Paige* 546; 7 *Cranch* 370; 3 *Eng.* 9.

Moore holds the funds as trustee, and as such is accountable for their profits. 4 *Eng·* 518; *Willard's Eq.* 604, 599; 16 *Ark.* 186.

Garland & Randolph, for appellants.

The dower interest of the wife in the lands of her husband is a creature of law and independent of contract. *Sec.* 1. *Ch.* 60 *Gould's Dig.*; 5 *Ark.* 608.

The consent of all parties is necessary to authorize a decree of a sum of money in lieu of dower. 11 *Grat.* 441; 2 *Coms.* 245; 1 *Seld.* 394.

Though the order of the probate court is not binding upon the complainant in this case, it is still necessary that it should be

vacated before the relief prayed can be granted. *Howell et al. vs. Howell*, 20 *Ark.*; 17 *Barb. S. C. R.* 582.

The statutory mode of claiming dower does not oust the inherent jurisdiction of chancery. 1 *Spence Eq. J.* 653; *Will. Eq.* 691 *et seq.*; 2 *Bro. Ch. Rep.* 620; 5 *John. C. R.* 582.

CARLETON for appellee.

Ferrell should have been made a party. Complainant asks to have the bond executed by her to him given up to be canceled, without showing that his interest in it has ceased. He was therefore a necessary party. 6 *Eng.* 136; 2 *Mad. Ch.* 173, 186, 191; 4 *B. Mon.* 309; *Story's Eq. Pl. S.* 72, *note* 2 *to p.* 91.

Out of land sold by order of court or by consent, a widow is only entitled to the use of one-third of the proceeds of sale for life. *Tabele et al. vs. Tabele*, 1 *John. Ch. Rep.* 45; 5 *Ib.* 58; 7 *Cranch* 370.

Moore, by the complainant's own showing, was but a tenant at will, and as such is not responsible for waste. 4 *Kent. note b to top page* 110, and cases cited.

The probate court having control of the fund had power to direct its division upon close of administration.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

John Reed died in Union county, owning lands to the amount of four hundred and forty-nine 91-100 acres, in which his widow, Margaret Reed, now Margaret Goodman, wife of John J. Goodman, had a dower interest, and of which she had the right of occupancy until her dower should be assigned to her; the lands being those on which the dwelling house of her husband was situated, and being the farm attached thereto. Before Reed died he had made a verbal contract for the sale of these lands to William Ferrell for two thousand dollars, having, after examination of the country, determined to remove to Texas, for the benefit of his large family of children, nine in number.

Notwithstanding the right of the widow to retain the mansion house, and farm free of rent, until the assignment of her

dower, and her intention to do so, influenced by her desire to do what she could to benefit the children of her husband, and supposing that it would be beneficial for them to move to Texas, as her husband had determined, and persuaded by the children and their friends, she resolved to carry out the verbal contract of her husband for the sale of the lands, give up her possession and join in a transfer of the title to Ferrell, who was willing to execute, on his part, the agreement of purchase he had made with Reed, if he could be assured of the goodness of the title he would receive.

And as there had as yet been no administration upon the estate of Reed, to carry out the contract and to assure Ferrell of his title, the widow with Wilson T. Reed and Lewis W. Reed, two adult sons of John Reed, executed a title bond, by which they bound themselves in the penal sum of four thousand dollars, that good title should be made to the lands to Ferrell, when the last payment for them should be made, which was accepted by Ferrell, and under the contract he took possession of the lands and mansion house surrendered to him by the widow, and by the heirs of John Reed.

The agreement which had been made between Reed and Ferrell was, that the latter should pay two thousand dollars for the lands in three instalments of six hundred and sixty-six 66-100 each, due respectively on the first days of January, 1853, 1854, and 1855. To this agreement the parties adhered after the death of Reed, and to the performance of it, each party secured the other, Ferrell by his three notes for the amounts, and payable at the times mentioned, and the widow and heirs by their bond—though the notes of Ferrell were not given till an administrator was appointed over the estate, which was not done till the widow and younger children of Reed removed to Texas, which they did upon the sale being made, that being the last of December, 1851.

It was the distinct understanding with the heirs of Reed, with the widow, and with Ferrell, that the widow, for her interest in the lands, and for giving up the possession of the house and

farm, was to be paid one-third of the proceeds of the sale, and upon this, and for this, the widow was persuaded and induced to do as she did; taking into consideration also the wishes of her husband, and the proposed benefit to the children.

After the removal of the widow, and of the family of John Reed to Texas, George W. Moore, the husband of one of the heirs of Reed, obtained letters of administration upon his estate, which was done mainly to carry out the arrangement of the sale ; and the several notes of Ferrell, with William Ferrell, as his security, were given to the administrator of Reed's estate, the notes being for the amounts, and due as specified— though the notes were not given till a sale had been made to Ferrell by the administrator under an order of the probate court of Union county.   The order of the court was made to legalize the sale to Ferrell, and the whole proceedings were in confirmation of what had been done between Ferrell and the widow and heirs of Reed; all of which had been done with the knowledge, consent, and concurrence, and upon the urgency of Moore, as one of those interested in the estate.

Ferrell paid the two notes that matured in 1853 and 1854, to Moore, the administrator, and for the third note of six hundred and sixty-six 66-100 dollars gave up and transferred the lands to Moore, who took possession of them about the 1st of January, 1854, and has since held them and had the occupancy and use thereof.

Moore proceeded in the administration of the estate till it was ready, as he assumed, for final settlement, and having paid up the debts and charges against the estate, and having a considerable surplus of means, besides the lands, for distribution among the heirs, at the April term, 1855, of the probate court of Union county, presented his account current for final settlement.   He then obtained an order requiring him to set apart, out of the mass ,of the estate of John Reed, six hundred and sixty-six 66-100 dollars, hold it in his own hands, and pay interest thereon annually at the rate of six per cent. per annum to the widow of the deceased.   The defendant Moore refuses to do any thing further than to com-

ply with this order, while the widow, or she and her present
husband claim the benefit of the agreement by which she was
to have one-third of the purchase money to be realized from
Ferrell, that being taken by her and the heirs of Reed as the
measure and value of her dower interest: Or, if she cannot
obtain this, the plaintiffs ask for an assignment of dower in the
lands, with an account and allowance of one-third of their rents
and profits.

Such are the principal and material facts alleged in the bill,
taking the amended bill as the bill in the case, although they
may not be alleged in the manner stated.

Moore, the administrator, all the children of Reed, and the
husbands of the married daughters, were made defendants to
the bill; all but Moore were non-residents, and upon publica-
tion against them, a decree *pro confesso* was awarded, but was
not entered as the bill was dismissed upon Moore's demurrer.

The order of the probate court is of no force against the
plaintiffs. The court had no right to pass upon the extent of Mrs.
Goodman's interest. She was not before the court, and it could
make no order, nor render any judgment to bind her, or to af-
ford Moore a defence against any claim she might make to any
part of the estate of Reed, or of its proceeds.

As dower, the widow of Reed was entitled to one-third part
of the lands, and to the use and occupancy of the dwelling
house and farm until her dower should be laid off; or, if the
lands were sold, to the use of one-third of the proceeds. This
is all she can be entitled to against the infant children of Reed,
but it does not follow that as against the children of full age,
that she may not be entitled to whatever they agreed should be
taken to be the value of her dower interest, upon her surren-
dering it to them, or upon joining with them in an act to give a
clear title to the lands, if such an act can be construed to be a
relinquishment to the heirs.

The plaintiffs are entitled, either to such part of six hundred
and sixty-six 66-100 dollars as the children of full age that par-
ticipated in the estimation of her dower interest, shall be to the

whole number; or, they are entitled to dower in the lands, yet to be assigned, with one-third of the rents and profits. One-third of the profits since the lands have been in the possession of Moore, would be one-third of the value of the rent of the land, to be ascertained by evidence. The profits of the lands during the two years that Ferrell occupied them were the amounts of the two notes that he paid on the lands. That amount issued from the lands, and if dower be assigned in them, it will be to be considered whether one-third of these profits till the assignment shall also fall into the dower.

All that has been said of the rights of the plaintiffs, as apparent in the case, grow out of it, as it is confessed by the demurrer. How it might appear upon other modes of defense, and upon trial, it is not for us to say. Nor do we wish to declare upon any thing further than upon what follows from the truth of the allegations of the bill.

We do not consider the demurrer well taken as a defense for the demurrant, however it might be in some of its particulars if interposed for the infant defendants.

Ferrell need not have been made a party. He is shown to have no interest in the lands, to have surrendered them to Moore, and to have given up to him the title bond of Mrs. Goodman, William T. Reed and Lewis H. Reed. The plaintiffs have no case, ask no relief against him. No decree could be rendered against him. *Dan. Ch. Pr.* 342; *Story Equ. Plg. S.* 231. *Trecothick vs. Austin* 4 *Mass.* 42. 3 *P. W.* 311, *note* (1;) *Todd vs. Sterrett*, 6 *J. J. M.* 432. What else is contained in the demurrer needs no mention, or may be held to be already adjudged in this opinion.

The demurrer should have been overruled. The decree must be reversed; the bill be answered, or otherwise defended than by demurrer; while the rights of the infant defendants will be protected by the court below; to which the case is remanded.