BUFORD J. BARRIER, JR., *v.* ISHAM M. KELLY ET AL.

1. EQUITY. *Election. Foundation of doctrine.*

The doctrine of equitable election is based on the principle that he who seeks equity must do equity.

2. SAME. *Estoppel. Facts constituting.*

Where a mother, supposing in good faith that she owned an undivided one-half interest in lands, which in fact belonged to her elder son, conveyed the same to a trustee for her younger son when he became of age, and at the same time and as a part of the same transaction the mother conveyed other property to the same trustee for the elder son when he became of age, and the elder son upon reaching majority claimed and received of the trustee all the property conveyed in the deed made for his benefit and enjoyed the same, without objection, for four years thereafter, he is estopped from assailing the title of the younger son to the half interest in the lands.

3. SAME.

In such case had the property conveyed to the use of the elder son exceeded the value of his lands conveyed by the mother to the use of the younger son the elder son might by timely proceedings have canceled the younger son's title and regained his lands upon surrender of so much only of the property conveyed to his use as equaled the value of his lands.

4. SAME. *Pleadings. Construed strongest against pleader.*

In such case, since pleadings are construed most strongly against the pleader, a bill by the elder son to cancel the deed, made by the mother to the use of the younger son, which does not show the value of the property received by the complainant under the deed made to his use, is demurrable.

FROM the chancery court of Yazoo county.

HON. HENRY C. CONN, Chancellor.

Barrier, appellant, was complainant and Kelly and others, appellees, were defendants in the court below. From a decree in defendants' favor the complainant appealed to the supreme court. [See *Barrier* v. *Kelly,* 81 Miss., 266, where a previous appeal in this case was dismissed.]

The facts are fully stated in the opinion of the court, however the deeds involved were as follows:

### Exhibit C.

"This indenture made and entered into this 4th day of June, 1890, between Mary Ann Ray, of Madison county, Mississippi, of the first part, and I. M. Kelly, of Yazoo county, Mississippi, of the second part, witnesseth: That the party of the first part in consideration of the love and affection which she bears to her beloved son, Jackson Harvell Ray, now a minor, and for other and divers good and lawful considerations thereunto moving the said party of the first part, not herein expressed, she hereby gives, grants, bargains, sells and conveys to the party of the second part the following real estate, to wit: An undivided

half interest in the east half of the southwest quarter, section seven; the east half and southwest quarter, and east half of northwest quarter, section eighteen, T. 10, R. 2 west, situated in Yazoo county, Mississippi. Also the following tract or parcel of land known and described as follows: North half of section three, township 8, range 3 west; east half of lot 7, section 18, township 8, range 3 east, situated in Madison county, Mississippi. Also the following personal property: A one-half undivided interest in all the cattle and household effects (except one bedroom set and clock, conveyed in deed of this date to the party of the second part for B. J. Barrier), and one horse and buggy being now owned by the party of the first part, and on the place on which she now lives in Madison county, Mississippi, now on my home in Madison county, Mississippi. To have and to hold the same until the said I. M. Kelly and his successors in the trust as hereafter set forth in succession, and subject to the limitations, terms, conditions, uses, and purposes hereinafter specified. But this conveyance is in trust and on the following terms and conditions, and for the following uses and purposes, and subject to the conditions, limitations, powers, and provisions following: Said party of the second part is to take charge of, control, manage, and direct the property herein conveyed to him as he may see proper, in the interest of said minor, until he shall bcome of age, when the said property herein conveyed, and still remaining in the hands of said trustee, shall be delivered to him; and said trustee is hereby directed to make a deed, in fee simple, to said lands, to said Jackson Harvell Ray, who shall thereafter hold the same absolutely. The said trustee is hereby authorized to make any improvements on said property he may see proper, rent out and control the same, and to invest any surplus money he may have, belonging to said minor, in property, which shall in all things follow the trust. Said trustee may resign his trust and appoint a successor in writing, duly acknowledgd and

recorded, or by last will and testament, and, should he die or resign without appointing a successor, the chancellor of the district may, on the application of said minor, or any one in his behalf, appoint a successor, but said minor may have the right to designate such successor, subject to the aproval of the said trustee, and such successor shall have all the rights herein conferred on said Kelly, and be subject to all the requirements and conditions of this instrument. Said trustee shall render to the court which has jurisdiction of the matters of guardianship, an annual account, showing the condition of his trusteeship, but will not be required to show receipt for expenditures, but his account book shall be sufficient evidence of all receipts and expenditures. Said trustee may lease said land in Madison county to the father of said minor on such terms as he might see proper, and make lower prices to him on account of his relationship, if he sees proper to do so. Should said minor die during his minority without a wife living, or issue of the body, or descendants of the same, the property herein conveyed shall go to his half-brother, B. J. Barrier, or his children, or descendants of the same, should he have any. Said trustee is hereby directed to make the necessary conveyances at the proper time to vest the title according to the terms of this instrument. Said trustee is to use sufficient of the proceeds of the said personal property, which he may sell at public or private sale, on such terms as he may think best, and of the rents and profits of said land, in suitably maintaining, educating, and taking care of said minor; and if there should not be a sufficient sum of money realized by said trustee out of the cash, notes, choses in action, delivered to him in accordance with an instrument of even date herewith, executed by me for the benefit of my son, B. J. Barrier, to pay what said trustee is required to pay by said instrument, he may pay such deficit out of the proceeds of said personal property, or rents and profits of said land. It is intended that said trustee shall pay all taxes and other neces-

sary expenditures on said land, and to have such reasonable compensation for his services as the court to which he accounts may allow him.　He shall also be allowed such reasonable attorney's fees and other expenses as he may have to incur in and about his trusteeship.

"Witness my signature this the day and year first above mentioned.

"(Signed)　　　　MARY ANN RAY."

### Exhibit D.

"This indenture made and entered into this the 4th day of June, 1890, between Mary Ann Ray, party of the first part, of Madison county, Mississippi, and I. M. Kelly, party of the second part, of Yazoo county, Mississippi, witnesseth: That the party of the first part for and in consideration of the love and affection which she bears her beloved son, B. J. Barrier, now a minor, and for other divers good and lawful considerations thereunto moving the said party of the first part, not herein expressed, she hereby gives, grants, assigns, and delivers to said party of the second part all of the cash money, notes, choses in action or other evidence of indebtedness now belonging to her; also the following personal property: A one-half undivided interest in all the cattle on the home place in Madison county, Mississippi; also the only bedroom set being on the said place, and an undivided half interest in the bedding and household effects of every kind; also one clock; all being on said place in said county, and property being claimed by party of the first part, and said place referred to being the one on which the party of the first part now resides; and, for consideration aforesaid, the party of the first part, gives, grants, bargains, sells, and conveys to the party of the second part whatever interests she may have in the lands of her former husband, B. J. Barrier, Sr., situated in Yazoo, Madison, and Neshoba

counties, in the state of Mississippi, owned by B. J. Barrier, Sr., at his death. To have and to hold the same unto the said party of the second part and his successors in the trust as hereinafter set forth in succession, and subject to the terms, conditions, uses, and purposes hereinafter specified. But this conveyance is in trust, and on the following terms and conditions, and for the following purposes, and subject to the limitations, powers, and provisions following: The said trustee shall, out of any money, or collections from any notes, choses in action or other evidence of indebtedness, as heretofore mentioned, pay all of the family expenses of or other demands made on him by the party of the first part, or such expenditures as he may think necessary, whether required by the party of the first part, during her life; hereby giving him full and discretionary power during the life of the party of the first part, except so far as she may direct; she reserving the right to direct any expenditure of such property, while she lives, that she may see proper. At the death of the party of the first part, said party of the second part is hereby directed to pay all debts that she may owe, including burial expenses, without probation and registry, as speedily as he can, out of said money, notes, etc., then erect such monument as he may see proper over the grave of the party of the first part and her deceased children, and pay expenses of removing the remains of the latter to the graveyard at Concord Church, in Yazoo county, Mississippi, where the party of the first part directs the said party of the second part to bury her remains. He is next to pay over the sum of one hundred dollars to Miss Eva Barrier, niece of the party of the first part, in consideration for the kindness she has shown and the services she has rendered to the party of the first part. He shall next pay to her husband, J. H. Ray, the sum of ―――― dollars; all of which sum, etc., shall be paid out of said money, notes, etc.; and should there be any balance left, the said trustee is to use the same for the benefit of said B. J. Barrier,

as he may require. The party of the first part hereby confer-
ring on the said trustee full power and discretion. The said
trustee may sell or dispose of said other personal property as
he may think best, either by private or public sale, and on such
terms as he may see proper, or retain such portion thereof for
the use of the said minor as in his judgment the interest of the
said minor may require. Said trustee is also authorized to use
any of the said funds for the education, support, and mainten-
ance of said minor, or may lend out or invest any surplus money
he may have for the benefit of said minor. And he shall report
to the proper court, in his guardianship of said minor, should
he act as such, under the last will and testament of said party
of the first part, appointing him, or he may report as trustee
and separate from any matters of guardianship, his acts and
doings hereunder, but his books of account shall be deemed
sufficient evidence of his receipts and disbursements in his
accounting hereunder, and he shall be allowed a reasonable
compensation for his services in this trust and all reasonable
attorney's fees and other necessary expenses which he may
incur. When said minor arrives at the age of twenty-one, then
said trustee shall deliver to him whatever of the estate herein
conveyed to him which he has on hand undisposed of, or convey
to him any real estate he may have purchased for him, if not
already conveyed to him, or the interest in the lands aforesaid
of his father. The party of the first part has not conveyed to
said trustee for the benefit of said minor any real estate except
whatever interest she may have in his father's lands, because
said minor has inherited from his father and his deceased
brothers sufficient real estate to make him own about an equal
amount in value to that owned by party of the first part, and
this day conveyed by her to the said party of the second part, as
trustee for her son, J. Harvell Ray. Said trustee may, in
writing, duly signed and executed and recorded, resign his trus-
teeship hereunder, and appoint a successor, or may appoint one

by his last will and testament; and such successor shall have all the rights, powers, and privileges herein given the party of the second part. Witness my signature this day and year first above mentioned, after the interlineation on the third page, 'or the interest in the lands aforesaid of his father,' and 'except whatever interest she may have in his father's lands.'

"(Signed)        •        MARY ANN RAY."

*C. H. Williams* and *W. W. Lockard,* for appellant.

Appellant was not put to an election for two obvious reasons. First, because there were two separate and complete conveyances, *inter vivos,* between different parties, and each relating to a different subject-matter. Second, if the two conveyances are construed as one instrument, even then the appellant is not put to his election on the face of the pleadings.

"Election in equity is a choice which a party is compelled to make between the acceptance of a benefit under an instrument and the retention of some property, already his own, which is attempted to be disposed of in favor of a third party by virtue of the same instrument." This is a simple definition of the doctrine of election. Now the foundation of the doctrine is: "One cannot accept and reject under the same instrument." 11 Am. & Eng. Enc. Law (2d ed.), 59.

Appellant is not attempting to accept and reject under one instrument.

He is not attempting to "approbate and reprobate," as it is termed in Scotch Law. He is taking under his mother's deed to himself, and rejecting nothing under the same. By his bill in the suit at bar, he is asking that he be given what is his own, and which came into his possession, not through his mother, but from another source, and which his mother attempted to convey, in fee simple to Ray, by a deed, complete within itself, and not by the deed made by her to appellant.

Appellees contend that these two deeds from Mrs. Ray, marked Exhibits C and D, should be construed as one, and that

then appellant would be put to his election, since the grantor conveyed to Ray by Exhibit C some land belonging to appellant and conveyed to appellant by Exhibit D certain money, notes, etc. This brings up the question whether these two deeds, each complete within itself, and between different parties and each relating to a different subject-matter, should be construed as one instrument, to such an extent as to place the appellant in the attitude of accepting and rejecting under that one instrument, and hence put to his election.

It is manifest that here are two deeds, *inter vivos,* drawn, signed and acknowledged separately, not purporting to be the disposition of all the property of the grantor, but made for a consideration between different parties, and each relating to a different subject-matter.

Even in order that two deeds may be construed together "they must be between the same parties and must relate to the same subject-matter." 17 Am. & Eng. Enc. Law (2d ed.), 10.

We contend that, in order that the two may be construed as one, and one of the grantees placed in the attitude of accepting and rejecting under one instrument, and hence bound to elect, it requires even more than the above two requisites for construing them together. But these two deeds sought to be construed as one do not even possess the two requisites of being between the same parties and relating to the same subject-matter. It will be noticed that the authority quoted above uses the word "must" in both requisites given. There is a difference between construing two instruments as one and construing them together. They might be construed together for purposes of interpretation, but more is required to actually construe them as one and put one of the grantees to his election, on the doctrine that he cannot accept and reject under one instrument. It seems that to justify two deeds being construed as one, there should be something in the deeds themselves showing that the grantor intended that the two be taken as one, and especially

82 Miss.—16

does this seem to be a correct view when the grantor in both deeds is the same person. *Vraig* v. *Wells,* 11 N. Y., 315; *Cornell* v. *Todd* (Denio), 2 N. Y., 130; *Mann* v. *Witbeck,* 17 (Barbour), N. Y., 388; and *Rexford* v. *Marquis,* 7 (Lans.), N. Y., 249.

There is nothing on the face of the pleadings to show that appellant ever got a cent from the notes, money, etc., which appellees claim were given appellant in consideration of Mrs. Ray deeding away appellant's land.

*Barnett & Perrin,* for appellees.

The bill in this case sets out with great particularity all the circumstances surrounding the transaction, and the conclusion from reading the bill is inevitable that in the mind of the pleader, the instruments referred to as "Exhibits C and D" are part and parcel of the same transaction.

There are two principles of equity which prevent the complainant from maintaining this suit. They are: He who seeks equity must do equity. He who comes into a court of equity must do so with clean hands.

Under the first principle arises the doctrine of equitable election which is expressed by Judge Story as follows, viz.: "The obligation imposed upon a party to choose between two inconsistent or alternative rights or claims, in cases where there is a clear intention of the person from whom he derives one, that he should not enjoy both." This statement of the doctrine is approved in the case of *Nutt* v. *Nutt,* Freeman's Chan. Rep., 128.

Leaving out now the question as to whether the deed to the complainant and that to his half-brother, Ray, are to be construed as one and the same instrument, we submit that from the deed to the complainant himself it indubitably appears that it was the intention of the complainant's mother, the grantor, that he should not have the gifts bestowed by said deed, and at the same time deprive his half-brother of any portion that was

given to him by the deed executed for his benefit. Many authorities hold that the doctrine of equitable election is simply an application of the doctrine of equitable estoppel.

On the second ground, viz.: "That he who comes into equity must do so with clean hands," the demurrer was also rightfully sustained. Appellant had made a settlement with the trustee under his mother's deed some three years or more before the filing of the bill. Whatever benefits had accrued to him under that settlement, and in accordance with the terms of his mother's deed, he had accepted without complaint; he had carried out his mother's intentions and now desires to have them set aside so far as they affect his brother, J. H. Ray, Jr., without divesting himself of the benefits obtained thereby. This conduct is so inequitable, that we do not believe a court of equity will sanction it.

WHITFIELD, C. J., delivered the opinion of the court.

At the time of the death of Mrs. Ray, B. J. Barrier, Jr., became the legal owner of the entire Taylor tract of land. His mother had first been married to Mr. Barrier. The only issue surviving from this marriage was B. J. Barrier, Jr., the appellant. After the death of Mr. Barrier, the widow intermarried with Mr. Ray, and by him had one son, the appellee. The appellant and appellee were, therefore, half-brothers. Mr. Barrier and Mr. Ray had bought, each, an undivided half interest in the Taylor tract of land. These transactions occurred before the code of 1880 abolished dower. Mrs. Barrier, upon her husband's death, was entitled to dower in that half of the Taylor land bought by her husband Barrier, which dower was never assigned. Upon her death, the dower interest expiring, B. J. Barrier, Jr., became sole owner of that undivided half interest. After the marriage of the widow Barrier to Mr. Ray, and before the birth of their son, the appellee, Mr. Ray conveyed his undivided half interest to

Mrs. Ray, then his wife, for her life, remainder to two Barrier sons then living, of whom B. J. Barrier, Jr., was one. The other Barrier son died, and B. J. Barrier, Jr., inherited this interest. Of course, upon the death of Mrs. Ray, her life estate in this land expired, and appellant became sole owner of that half interest, also, in the Taylor land. So that, as stated, on the death of Mrs. Ray the appellant became the sole owner of the legal title of the entire Taylor land. On the 4th of June, 1890, Mrs. Ray made two deeds, by one of which she conveyed to I. M. Kelly, as trustee for J. H. Ray, Jr., an undivided half interest in certain chattels and household effects, and a buggy and a horse, and attempted to convey an undivided half interest in the said Taylor land to I. M. Kelly, trustee, to be by him conveyed to J. H. Ray, Jr., upon his arrival at majority. By the other deed she conveyed to I. M. Kelly, trustee, for the benefit of B. J. Barrier, Jr., "all of the cash money, notes, choses in action and other evidences of indebtedness" belonging to her at the date of the deed; also one undivided half interest in the cattle on the home place; also the only bedroom set of furniture, and also an undivided half interest in the bedding and the household effects of every kind; also one clock, and whatever interest she might have in the lands of her husband, B. J. Barrier, Sr., situated in Yazoo, Madison and Neshoba counties, in this state, and owned by her husband, B. J. Barrier, Sr., at his death. She, however, reserved the right during her life to make any expenditure out of the notes, cash, etc., she might see proper; and she further charged the cash, notes, etc., with the family expenses, for debts, burial expenses, the cost of erecting a monument over herself, and of removing the remains of her deceased children to the graveyard at Concord Church, and with the payment of a legacy of $100 to Miss Eva Barrier, her neice; and the balance, if any, was to be used by the said trustee for the benefit of B. J. Barrier, Jr., as he might require. In this last deed the

grantor says: "The party of the first part (the mother) has not conveyed to said trustee for the benefit of said B. J. Barrier, Jr., any real estate, except whatever interest she might have in his father's lands, because said minor has inherited from his father and the deceased brother sufficient real estate to make him own about an equal amount, in value, to that owned by the party of the first part, and this day conveyed by her to said party of the second part (Kelly) as trustee for her son J. Harvell Ray." These deeds were made on the same day, mutually referred to each other, not for description of the property, merely, and are plainly parts of one transaction, and to be construed as one instrument. The mother, having executed these deeds on the 4th of June, 1890, died June 10, 1890.

We think it perfectly clear that Mrs. Ray believed herself to be owner of the undivided half interest in the Taylor land which she attempted to convey to her son, J. H. Ray, Jr., and in which her husband had conveyed to her a life interest only; and, second, that she believed her Barrier son, the appellant, owned the other undivided interest in that same land, which came through his father, subject to her dower interest. She also thought she had some interest in certain lands in Madison and Neshoba counties, which she conveyed to her son B. J. Barrier, Jr.

In July, 1890, Kelly qualified as guardian to B. J. Barrier, Jr., in Madison county. On the 16th of November, 1897, B. J. Barrier, Jr., became 21 years of age; and in March, 1898, Kelly made his final report as trustee and guardian of Barrier, reporting a settlement between him as trustee and guardian, according to the terms of the deed of Mrs. Ray to Kelly for Barrier's benefit, and was discharged by the court. Some four years thereafter, to wit: on December 30, 1901, appellant filed this bill against his late guardian, Kelly, and his half-brother, the appellee, claiming that he was owner in fee simple of the entire Taylor tract of land, one undivided half interest in which

his mother had attempted, as shown, to convey to his half-brother, J. H. Ray, Jr. He prayed that this deed should be canceled as a cloud upon his title; and, second, that the court should decree him possession of, and ownership in fee simple of, the entire Taylor tract of land; third, that Kelly, trustee, should be required to account and pay over to him the other half of the rents and profits from said land, which he had collected since and including the year 1890, together with the interest at legal rate thereon; and, fourth, that in case Kelly had paid these rents to J. H. Ray, Jr., he, the said Ray, should be required to account and pay over same to him. The appellee, at the May term, 1902, demurred to this bill upon the ground that it showed no cause of action, and that the appellant did not offer to do equity. This demurrer was sustained by the court, and sixty days allowed complainant in which to amend his bill, or file an amended bill in the case. The complainant declined to amend his bill in the sixty days allowed him, whereupon the court below dismissed the bill, and from that order this appeal is prosecuted.

It will be observed that the bill was dismissed under the principle of equitable election; the court holding that the appellant had made his election in accordance with the instrument, and not against it, and that he could not now repudiate that election. It will be specially noted that in this case it is clear, first, that the mother believed herself to be the owner of the land she attempted to convey to the appellee, and hence could not have intended to convey that land as being the appellant's property, and, second, that nevertheless she did in fact attempt to convey what was not hers, but plaintiff's property. It is clear, therefore, on the face of the instrument, that she did convey, or attempt to convey, an undivided half interest which was not her property, but wholly the property of appellant, and by the same instrument did convey to him, first, the surplus left from the profits of cash, notes, etc.; second, certain specific

household effects; third, an undivided half interest in the cattle on the place; and, fourth, whatever interest she had in certain lands in the three counties named.

One of the fundamental differences between the doctrine of equitable election, as we administer it, and as it was administered under the Roman civil law, from which it was borrowed, is that with us the doctrine of equitable election applies, whether the donor was or was not aware that he was dealing with property not his own. 1 Pom. Eq. Jur., sec. 463; 1 White & Tudor's Leading Cases in Eq., p. 546; note to *Streatfield* v. *Streatfield;* and the Am. & Eng. Enc. Law (2d ed.), vol. 2, p. 68 (2). Another difference between the two systems is that under the civil law the doctrine of equitable election was confined to wills. See Mr. Swanston's notes to *Dillon* v. *Parker,* 1 Swanston, 359, and note, above referred to, in 1 White & Tudor's Leading Cases in Eq., vol. 1, pt. 1, pp. 513-541. With us the doctrine applies to deeds, wills, and all other instruments whatsoever. One of the differences between the application of the principle to a will and to a deed is that "in the case of deeds, such as settlements, a person may be compelled to elect, although there is not a clear intention on the part of the settler to dispose of property which is not his own; and this on the ground that a person cannot accept and reject the same instrument." See Am. & Eng. Enc. Law (2d ed.), vol. 2, p. 69 (5), and note 2. Lord Redesdale said of this in *Birmingham* v. *Kirwan,* 2 Schoales & L. 444, cited in said note, that this difference arose "because deeds are generally matter of contract, and the contract is not to be interpreted otherwise than as the consideration, which is expressed, requires." We note this distinction, though it is immaterial in this case, since it is perfectly manifest here that Mrs. Ray did intend to convey the property she attempted to convey to Kelly for her son, Ray. There is no doubt about her clear intention so to convey, and no doubt that clear intention appears on the face of the instru-

ment; and just as little doubt that she meant to convey it as her own, the fact being that it was complainant's property. The doctrine of equitable election is, in our judgment, not founded on intention, as held by so many cases, but is, as stated by Mr. Pomeroy, "a positive rule of law, covering the devolution and transmission of property by instruments of donation, and is invoked wholly irrespective of the intention of the donor, although in the vast majority of cases it undoubtedly does carry into effect the donor's real purpose and desire." The doctrine rests, as we think, upon the equitable principle that he who seeks equity must do equity. We approve and adopt the statement of the doctrine by the United States Supreme Court in *Peters* v. *Bain,* 133 U. S., 395; 10 Sup. Ct., 354; 33 L. Ed., 696, as follows: "The doctrine of election rests upon the principle that he who seeks equity must do it, and means, as the term is ordinarily used, that, where two inconsistent or alternative rights or claims are presented to the choice of a party by a person who manifests the clear intention that he should not enjoy both, then he must accept or reject one or the other, and so, in other words, that one cannot take a benefit under an instrument, and then repudiate it." In *Cooper* v. *Cooper,* L. R. 7, H. L. 67, Lord Chancellor Cairns, in explaining that the doctrine is applied without reference to whether the donor knew that the property of which he attempted to dispose belonged to another, said: "The rule . . . . does not proceed either upon an expressed intention, or upon a conjecture of a presumed intention, but it proceeds on a rule of equity, founded upon the highest principles of equity, and as to which the court does not occupy itself in finding out whether the rule was present or was not present to the mind of the party making the will." Mr. Pomeroy makes the matter exceedingly clear in section 464: "A disposition calling for an application of the doctrine of election may be made under the two following different states of circumstances: Either the donor may know

that the property which he assumes to deal with is not his own,
but belongs to another, and notwithstanding such knowledge
he may assume to give it away, or he may give it away, not
knowing that it belongs to another, but erroneously and in good
faith supposing that it is his own.    In the first of these two
cases the presumption of an intention on the part of the donor
to annex a condition to the gift calling for an election by the
beneficiary plainly agrees with the actual fact.    At all events,
it violates no probabilities.    When a testator devises an estate
belonging to A to some third person, and at the same time
bestows a portion of his own property upon A, he undoubtedly
must rely upon the benefits thus conferred upon A, as an
inducement to a ratification by A of the whole disposition.    To
give A the property which the testator was able to dispose of,
and at the same time to allow him to claim his own estate,
which had been devised to the third person, by his own para-
mount title, would be to frustrate the evident intention of the
testator.    In the second case, where the testator or other donor
erroneously supposes that the property which he undertakes to
give away is in fact his own, the doctrine of election applies with
the same force and to the same extent as in the former.    Here
it is, in the nature of things, simply impossible that the donor
could actually have had the intention which the theory imputes
to him, since he really believes himself to have a disposing
power over the property, or to be dealing with property which
is his own."

This case falls squarely within the second category stated by
Mr. Pomeroy, and it is simply impossible that the grantor, Mrs.
Ray, could have had the intention imputed to her by the theory,
since she believed herself to be disposing of her own property.
We prefer, therefore, the broader view of the supreme court of
the United States, of Mr. Pomeroy, and of Lord Chancellor
Cairns, that the rational basis of the doctrine is not to be found
in the supposed intention of the donor, but in the equitable

principle that he who seeks equity must do equity. We think this doctrine applies in full force to this case. Appellant has made his election. He has been receiving since 1890 whatever surplus has been yielded from the cash, notes, etc. He has retained the specific personal gifts, and for four years after his arrival at age, and after a full settlement with his guardian has been made, has made no objection; all the while knowing, as is clear from the pleadings, that his half-brother was in reception of the rents and profits of the lands attempted to be conveyed to him by his mother. Equity will not permit him now to rip up the whole transaction, alter the entire situation, and repudiate his election once definitely made. It is true that the equitable doctrine of election is administered upon the principle of compensation, and not of forfeiture, though, as said by Gibson, C. J., in *Lewis* v. *Lewis,* 1 Harris, 79, 53 Am. Dec., 443, there may be some few cases in which the principle of forfeiture alone can be applied. In Am. & Eng. Enc. Law (2d ed.), vol. 2, p. 115 (3), the rule is thus expressed: "According to the great weight of authority, as now conclusively established, the refractory donee does not, in such event, forfeit the benefit or estate conferred upon him, but is bound only to make compensation out of it to the disappointed donee to the extent of the value of the property of such refractory donee which the donor has attempted to bestow upon such disappointed donee. In such case a court of equity treats the refractory donee as a trustee, and will sequester the benefit intended for him, in order to secure compensation to the disappointed donee. But the excess does not go to the personal representative of the testator, as if undisposed of, but is to be given to the refractory donee; the purpose being satisfied, for which alone the court controlled the legal right. See, also, 1 Pom. Eq. Jur., sec. 468, and note 1 on page 636, and 1 White & Tudor's Leading Cases in Eq., note, *supra,* vol. 1, pt. 1, p. 543. And it follows from this principle of compensation that, since appellant in this case

had his election to claim against the instrument and retain his own property, he might, in case the surplus arising from the cash, notes, etc., and proceeds of other personal property given him, had exceeded in value his property conveyed to his brother, have retained, in addition to his own property, the difference between the value of that property and such surplus, and it is earnestly urged that the bill does not show anything but the mere settlement between him and his guardian, or that he had received a dollar therefrom, and that the bill further does not show that there was any surplus left from said cash, notes, etc. But the perfect reply to this is that all this lay peculiarly within the knowledge of complainant, and, under the rule that the pleadings must be taken most strongly against the pleader, it must be presumed that if the fact had been that there was no such surplus from such cash, notes, etc., he would certainly have averred it. The bill avers the rents of the entire Taylor tract of land to be only $300, and it may be that appellant has derived from cash, notes, etc., and other personal property, more, in value, than the undivided half interest in said land attempted to be conveyed by his mother to appellee was worth. At all events, it was the duty of complainant to fully and particularly disclose the truth as to this—most especially so when he comes into a court of conscience, pressing his legal rights to their utmost limit, without offering to return anything he may have received. It is true, he was an infant up to his arrival at age in November, 1897. But he waited, under the peculiar circumstances we have set out, four years thereafter, to file this bill. We are clearly of the opinion that the learned court below was entirely right in applying to him the principle of equitable election.

Not only did the court below give him sixty days in which to amend this bill, but said time was given, if he chose so to use it, in which to file an amended bill; and the inference from his failure to avail himself of leave to do either is irresistible

that he had stated his case as strongly as it was possible to state it, and that, had he made the full disclosure equity required at his hands in the situation, it would appear that he had elected to keep what his mother gave him, because it was worth more than the land belonging to him, which she had conveyed to Kelly for his brother's benefit.

*Affirmed.*