CRAIN v. FOSTER.

5-1744 . 322 S. W. 2d 443

Opinion delivered March 9, 1959.

[Clarification opinion delivered April 13, 1959]

*Melvin T. Chambers* and *J. M. Shackleford,* for appellant.

*McKay, Anderson & Crumpler,* for appellee.

Ed. F. McFADDIN, Associate Justice. The facts are complicated and require some detailing; but, once understood, the result is clear. The question posed is whether Appellee Foster owned an undivided one-tenth interest (as a tenant in common) in a tract of 1,000 acres, or owned 100 acres in severalty. We conclude that appellee owned 100 acres in severalty; and we rest our opinion on the rule of equitable estoppel.

Ike Jermany owned about 1,000 acres in Columbia County[1], and died intestate prior to 1941. Z. W. Jermany, as one of the heirs of Ike Jermany, inherited an undivided one-tenth interest in the 1,000 acres. In May 1941 a partition suit was filed by Z. W. Jermany and others; and all the heirs of Ike Jermany were either plaintiffs or defendants[2]. No *lis pendens* was filed in the partition suit. On June 30, 1941 the Chancery Court made a finding that the land could be partitioned in kind, and three Commissioners were appointed to view the land and make the partition. (§ 34-1822 *et seq.* Ark. Stats.) On July 17, 1941 the Commissioners' reported the partition of the property, and Z. W. Jermany received in severalty[3] 100 acres specifically described. On October 27, 1941 the Court approved the Commissioners' report and made the final decree of partition, which was filed for record as a muniment of title. Z. W. Jermany took possession of the specific 100 acres awarded him in severalty, and the other heirs of Ike Jermany took possession of their described tracts in severalty. Z. W. Jermany rented his 100 acres and collected rents for several years.

[1] The land was not exactly 1,000 acres, but all parties refer to it as such.

[2] There is some question as to the sufficiency of the service on some of the defendants; but that question becomes immaterial in the view we adopt as to equitable estoppel.

[3] Bouvier's Law Dictionary says of severalty: "An estate which is held by the tenant in his own right only, without any other being joined or connected with him in point of interest during the continuance of his estate. 2 Black Comm. 179."

But something had occurred prior to the entry of the final decree of partition (October 27, 1941) which caused the present litigation. While the Commissioners' report was pending and before it was approved, Z. W. Jermany executed a mortgage to J. I. Phelps on October 14, 1941 conveying Z. W. Jermany's undivided one-tenth interest in the 1,000 acres of land to secure a debt of $605.00, and the mortgage[4] was filed for record on the same day. Z. W. Jermany mortgaged his undivided one-tenth interest in the 1,000 acres thirteen days before the final decree of partition.

Phelps assigned his debt and mortgage to R. S. Foster, who filed foreclosure suit against Z. W. Jermany in May 1945 and obtained foreclosure decree describing the property as Z. W. Jermany's undivided one-tenth interest in the 1,000 acres of land. Foster purchased at the foreclosure sale, and on November 12, 1945 he received a deed from the Chancery Court, describing the property conveyed as all of Z. W. Jermany's undivided one-tenth interest in the 1,000 acres of land.

Some time in 1950 appellant, Jack Crain, obtained timber deeds from a number of the heirs of Ike Jermany who had received their deeds to their several tracts in the partition suit; and Crain commenced cutting timber from the lands on which he held timber deeds, but he at no time entered on the 100 acres of land that had been awarded to Z. W. Jermany in the partition suit. Appellee, Foster, brought the present suit to enjoin appellant, Crain, from cutting the timber on any of the 1,000 acres of land, and for damages for timber that Crain had cut. Foster's claim was that he owned an undivided one-tenth interest in the entire 1,000 acres of the Ike Jermany lands, rather than the 100 acres which Z. W. Jermany received in severalty in the partition suit. Foster claimed: (a) that when Phelps took the mortgage thirteen days before the partition decree, there was no *lis pendens* of record; (b) that Z. W. Jermany

---

[4] The instrument which Z. W. Jermany executed was a deed of trust to J. E. Booth, as Trustee for J. I. Phelps, to secure the debt of $605.00 due to Phelps, but it is more clarifying to refer to it as a mortgage. The practical effect is the same in this case.

owned the undivided one-tenth interest in the 1,000 acres until the decree of partition was finally approved; and (c) that Foster foreclosed on the undivided one-tenth interest of Z. W. Jermany and owned that interest, rather than the 100 acres which Z. W. Jermany received in severalty in the partition proceedings.

So much for the detailing of the facts. After an extensive hearing, the Chancery Court found in favor of Foster, enjoined Crain, and held him liable to Foster for damages. Crain has appealed from the decree, and also from the failure of the Court to award him $400.00 damages against Foster because of timber lost on account of Foster's temporary injunction. Many interesting legal questions are presented[5]; we have been enlightened by able briefs and oral argument; but we find it necessary to discuss only one point, which is: one who accepts the benefit of a decree is estopped to deny its validity. This is the rule of equitable estoppel.

When Foster filed this present suit, he alleged that he owned an undivided one-tenth interest in the entire 1,000 acres. Crain alleged that Foster was estopped to make such claim.[6] Thus, estoppel was pleaded. The law is well settled that one who, with knowledge or notice of the facts, accepts or retains the benefit of a transaction, is estopped to deny the force and validity of the transaction. Two recent Arkansas cases involving this rule of equitable estoppel are: *Johnson* v. *Darnell,* 220 Ark. 625, 249 S. W. 2d 5; and *State of Tennessee* v. *Barton,*

---

[5] Some of these questions are: (1) the effect of our *lis pendens* statute (§ 27-501 Ark. Stats.) on our statute governing partitions (§ 34-1801) *et seq.* Ark. Stats.) ; (2) the effect of the failure to file a *lis pendens* in the partition suit; (3) the effect of the failure to obtain proper service on all of the defendants in the partition suit; (4) the effect of a purchase in a pending partition suit; and (5) the effect of § 34-1822 Ark. Stats. on titles acquired during partition proceedings.

[6] Here is a portion of Crain's pleading: "That the plaintiff has, at all times since, recognized this 100 acres as his property to the exclusion of the heirs of Ike Jermany; and should he now be permitted to claim an additional 1/10th interest in the other 900 acres he would be claiming 190 acres instead of 100 acres. "That by his acts he is estopped and barred of claiming any interest other than the land set aside to Z. W. Jermany as set out above . . . That he is guilty· of laches and estoppel as toward all other owners of any part of the original 1,000 acres of land."

210 Ark. 816, 198 S. W. 2d 512. In the last cited case, a man had obtained the benefits of a divorce decree rendered in Utah, and we held that he was estopped from questioning the validity of that decree[7]. See also *Illinois Standard Mtg. Co.* v. *Collins*, 187 Ark. 902, 63 S. W. 2d 342. In *Potts* v. *Rader*, 215 Ark. 160, 219 S. W. 2d 769, we said: "The appellants cannot claim title to part of the land in reliance upon the deed and at the same time claim the rest upon the theory of its invalidity. *Wood* v. *Hay*, 206 Ark. 892, 175 S. W. 2d 189."

The overwhelming preponderance of the evidence establishes that R. S. Foster accepted and treated as his own the specific 100 acres of land that had been awarded to Z. W. Jermany in severalty in the partition suit. When Appellee Foster treated the Z. W. Jermany 100 acres as his own property, he thereby estopped himself from claiming an undivided one-tenth interest in the entire 1,000 acres. Here is some of the testimony on this phase of the case:

(1) It will be remembered that Appellee Foster received his deed in his foreclosure suit against Z. W. Jermany on November 12, 1945. W. C. White testified that he had rented the 100-acre tract from Z. W. Jermany from 1941 to 1945; and moved from the 100-acre tract when word came to him that he would have to see Foster about further renting. Hodge Poole testified that in early 1946 he had a conversation with Appellee

---

[7] In 19 Am. Jur. 682 *et seq.* "Estoppel" § 64, the holdings are summarized: "Estoppel is frequently based upon the acceptance and retention by one having knowledge of notice of the facts of benefits from a transaction . . . which he might have rejected or contested. This doctrine is obviously a branch of the rule against assuming inconsistent positions . . . Such estoppel operates to prevent the party thus benefited from questioning the validity and effectiveness of the matter or transaction in so far as it imposes a liability or restriction upon him, or, in other words, it precludes one who accepts the benefits from repudiating the accompanying or resulting obligation. It finds application in many different fields and under a wide variety of circumstances . . . It is also applied . . . to prevent one who accepts the benefit of a judgment or decree from questioning its validity or opposing the enforcement of its terms . . ." Some interesting cases from other jurisdictions, applying the rule of equitable estoppel in situations analogous to the one at bar, are: *Arthur* v. *Israel*, 15 Colo. 147, 25 Pac. 81, 22 A.S.R. 381, 10 L.R.A. 693; *Barrier* v. *Kelly*, 82 Miss. 233, 33 So. 974, 62 L.R.A. 421; *Marshall* v. *McDermitt*, 79 W. Va. 245, 90 S. E. 830, L.R.A. 1917C, 883.

Foster, who told him to tell White that he would have to come to see Foster if he wanted to rent the 100-acre tract in 1946. Poole says he imparted this information to White. Foster, recalled on rebuttal, did not deny this testimony of Poole; so we have Foster sending word to the tenant on the 100-acre tract that he would have to see him about the rent for 1946.

(2) Odis Paschall testified that he rented the 100-acre tract from appellee, Foster, in 1946 and paid him the full rent for the 100-acre tract. Foster, recalled in rebuttal, did not deny this testimony of Paschall: he merely said he could not remember.

(3) Pinky Lee Mack and Samuel Short testified that each was one of the Ike Jermany heirs and that each received a specific tract in the partition suit. They testified that they sold the timber on their specific tracts to Foster's son-in-law in 1953, who paid them the full price for the timber, not retaining any part of the money to pay to R. S. Foster (which he would have been entitled to receive if he still owned an undivided one-tenth interest in the 1,000 acres). Appellee, Foster, recalled on rebuttal, admitted that he knew of some timber sales from certain tracts of the 1,000 acres, but he thought his son-in-law had given him one-tenth of the amount of the timber; that if his son-in-law did not, he just forgot to do it.

(4) Hadley McDowell testified that in about 1946 Foster cut, or allowed to be cut, the hardwood timber from the Z. W. Jermany 100-acre tract, but that Foster did not allow the pine timber to be cut from that tract; and that Foster said that he did not want the pine timber cut because the land was his own. Foster denied the Hadley McDowell testimony; but the fact remains that the hardwood timber was cut from the 100-acre tract and the pine timber was not cut.

Foster made a sweeping denial that he had ever claimed to own the 100-acre tract; he said title to it was in another person; but we have pointed out in the numbered paragraphs the specific items of testimony con-

cerning some of which Foster made no denial. Without detailing all the other evidence in the record, we reach the conclusion that, after Foster completed his foreclosure suit against Z. W. Jermany in 1945, Foster thereafter treated the Z. W. Jermany 100-acre tract as his own individual property; and is, therefore, estopped from now claiming that he has an undivided one-tenth interest in the entire 1,000-acre tract instead of ownership in severalty of the Z. W. Jermany 100-acre tract. It, therefore follows that when Foster obtained the temporary injunction against Crain from cutting timber on the other 900 acres of the Ike Jermany lands, Foster acted wrongfully and Crain is entitled to recover $400.00 as the undisputed amount of his damages.

The decree of the Chancery Court is reversed and the cause is remanded with directions to dismiss Foster's suit, and award Crain $400.00 damages and all costs.

## ON CLARIFICATION

Ed. F. McFaddin, Associate Justice. Our opinion was delivered in this case on March 9, 1959; and on March 20, 1959 a number of persons — not parties to this appeal — filed a motion for clarification of our opinion. We refer to these persons as "movants". They are: G. G. Waller, Levye Waller, W. H. Kitchens, Jr., Elfred Kitchens, H. G. McClurkin, Administrator of the Estate of Fred B. McClurkin, deceased, Lena McClurkin, J. P. McClurkin, Evelyn Measles, Calvin Dean McClurkin, Fred Wayland McClurkin, and Joe Ann McClurkin.

In the motion for clarification these movants say: that they have rights in certain of the lands involved in this case; that they were parties in the Trial Court; that their rights were recognized and declared by the decree of the Trial Court; that neither Crain nor Foster, nor any other person, appealed as to these movants; that the opinion of this Court, delivered on March 9, 1959, might be interpreted as affecting the rights of these movants, since the opinion says in the last paragraph: "The decree of the Chancery Court is reversed and the cause is remanded, . . ." In view of the foregoing, the

movants pray that we clarify our opinion by stating that the rights of these movants are not affected by the appeal.

The movants are entitled to the requested clarification. In fact, their motion is not resisted. The rules, as to class representation and privies, do not apply to the situations of these movants. We have repeatedly held that a judgment cannot be rendered by a Trial Court for or against a person not a party. *Goodman* v. *Moore,* 22 Ark. 191; *Sisk* v. *Almon,* 34 Ark. 391; *First National Bank of Springdale* v. *Frost,* 98 Ark. 446, 136 S. W. 186; *City of Bentonville* v. *Browne,* 108 Ark. 306, 158 S. W. 161; *Bryan* v. *Akers,* 177 Ark. 681, 7 S. W. 2d 325, 58 A. L. R. 1128. The same rule necessarily applies as regards persons such as these movants who are not parties to an appeal in this Court. The opinion of this Court as of March 9, 1959 was not intended to, and does not, affect in any way the rights of these movants as decreed by the Chancery Court.