William Lee NIELSEN *v.* Deborah BERGER-NIELSEN
and Joe Benson

01-997                                          69 S.W.3d 414

Supreme Court of Arkansas
Opinion delivered March 14, 2002

*Harry McDermott*, for appellant.

*Taylor Law Firm*, by: *Terry D. Harper* and *Chris D. Mitchell*, for appellee Deborah Berger-Nielsen.

*Benson, Robinson & Wood, P.L.C.*, by: *Joe P. Robinson*, for appellee Joe Benson.

JIM HANNAH, Justice. Appellant William Lee Nielsen ("William") appeals the Washington County Circuit Court's dismissal of his complaints against Appellee Joe Benson and Appellee Deborah Berger-Nielsen ("Deborah").

On February 14, 2000, Deborah filed for divorce from William. Deborah's attorney was Benson. William filed a general answer on March 14, 2000, and then counterclaimed against Deborah on September 11, 2000, seeking the divorce in his favor and for division of the marital property. Deborah filed her answer to the counterclaim on September 20, 2000.

Around September 2000, the parties began negotiations for a property settlement in the divorce action. Documents in the record indicate that Benson and William's attorney, Harry McDermott, spoke on the phone on September 12, 2000, regarding the terms of the property settlement, to which Benson followed up by letter on September 15, 2000, laying out the general terms of the settlement agreement. This letter stated:

> This confirms our phone call of September 12, 2000 wherein I advised that my client, Deborah Nielsen, had agreed to the terms of your client's settlement proposal in this divorce matter. Mr. Berger is transferring $61,600 to my trust account which will be dispersed upon signature of the Property Settlement Agreement. Mrs. Nielsen will present a title to the '91 Isuzu Trooper at that time. I will provide you a Quitclaim Deed for Bill's signature of the marital residence and the Property Settlement Agreement once drafted, however, I need verification of Bill's income to complete the support clause. Accordingly, please provide me copies of his

most recent payroll stubs. Also, please enter an Order of Dismissal of the partition action which you filed against Mr. and Mrs. Berger and Deborah.

On the same day Benson wrote this letter to McDermott, he wrote a letter to the chancery court noting that the parties had reached a settlement resolving the issues and, therefore, the full-day trial set for September 22, 2000, was not needed.

Five days after Benson wrote these letters, he filed a motion on September 20, 2000, to withdraw as Deborah's counsel. In the motion, Benson cited as his reason for withdrawal as "irreconcilable differences between the Plaintiff, Deborah Berger-Nielsen and her attorney, Joe Benson regarding the terms of a proposed property settlement agreement." The trial court granted Benson's motion to withdraw on October 4, 2000.

On November 14, 2000, Attorney Terry Harper entered his appearance as Deborah's attorney. Approximately one month later on December 8, 2000, William filed a motion to compel settlement and for a temporary hearing, claiming that a settlement agreement had been reached, and asking the court to compel action on that settlement. He attached two exhibits to this motion: a written copy of his basic terms of the settlement agreement and Benson's letter to McDermott on September 15, 2000. Deborah responded to this motion on December 18, 2000. The trial court set a hearing on all pending motions for February 7, 2001.

Prior to the hearing, William attempted to subpoena Benson's appearance at the hearing, presumably seeking testimony that an oral property settlement agreement had been reached by the parties. On January 30, 2001, Benson filed a motion on his own behalf to quash the subpoena claiming that the testimony sought by William was protected by attorney-client privilege. The trial court heard the motion to quash on February 5, 2001. At the hearing, the trial court determined that Deborah did not intend to waive the attorney-client privilege; therefore, the court granted Benson's motion to quash the subpoena. An order was entered to this effect on February 13, 2001.

William filed a brief in support of his motion to compel the settlement on February 6, 2001. In this brief, William argued that Arkansas law indicates that an attorney can authorize a settlement

for his or her client, and that Benson clearly authorized this settlement by letter and over the phone for his client, Deborah. Following this filing, William filed an amended counterclaim and third-party complaint against Deborah and, for the first time, against Benson as a third-party defendant. He included a claim for breach of contract against Deborah, claiming that she agreed to the property settlement agreement and then withdrew this agreement. He filed his third-party complaint against Benson on a theory of a "breach of an implied promise" to William representing that he had the authority to contractually bind Deborah to the settlement agreement. William concluded his amended pleading by stating:

> Wherefore, premise considered, Bill Nielsen, defendant/counterclaimant, prays that the complaint of Deborah Berger-Nielsen be dismissed, he be granted a divorce from the defendant as well as awarded his attorney's fees and court costs, the marital property of the parties be divided by the Court pursuant to the property settlement agreement attached and for all other relief to which he may be entitled including his additional attorney's fees and cost directly caused by the plaintiff's breach of the property settlement agreement.

> In the alternative, Bill Nielsen, defendant/counterclaimant, prays that the complaint of Deborah Berger-Nielsen be dismissed, he be granted a divorce from the defendant as well as payment of his attorney's fees and court costs, the marital property of the parties be divided by the Court, and for all other relief to which he may be entitled. Plaintiff further prays for damages in excess of $1,000 against third party defendant Joe Benson as well as for all his attorney's fees and costs resulting from the plaintiff's failure to affirm or agree to the settlement agreement agreed to by third party defendant Joe Benson on her behalf and for all other relief to which he may be entitled.

William attached to this complaint the exhibit of his proposed property settlement agreement and a copy of Benson's September 15, 2000, letter.

On February 21, 2001, Benson filed a motion and supporting brief to dismiss Nielsen's third-party complaint, noting that the complaint was not timely filed, that a settlement that deals with real property must be in writing and signed by the parties to be bound according to the statute of frauds, that Benson was not in privity of contract with Deborah or William, and that the third-party complaint fails to state facts upon which relief could be granted.

Deborah filed her answer to William's amended counterclaim on February 22, 2001. William filed his response to the motion to dismiss on February 28, 2001, claiming that he amended his complaint to include claims for breach of contract against Deborah, breach of duty against Benson, and that one of them is liable for the failure to honor the proposed settlement agreement.

On March 7, 2001, the trial court held a hearing on Deborah's and Benson's motions to dismiss the third-party complaint against Benson and on William's motion to compel discovery. The court first heard arguments on the motion to dismiss, and concluded that because the property settlement dealt with real property, it had to have been in writing to be binding on the principals as well as on Benson, an agent. Because it was not, there was no contract and, therefore, the third-party complaint was meritless. Following the hearing, William filed a motion for findings of fact and conclusions of law on the dismissal, and set out his claims in a letter to the court filed on March 20, 2001. In that letter, William indicated that he wanted the findings of fact and conclusions of law in writing because he planned to immediately appeal that order, in that he had "nonsuited his amended claim against the plaintiff," presumably meaning he had dismissed his counterclaim against Deborah. The trial court filed its order on March 20, 2001, noting that it had taken into account the "[m]otion, representations of counsel, and other facts and matters appearing before the Court" in deciding to dismiss William's complaint against Benson. Specifically, the court found that William did not have a claim against Benson for breach of an implied contract because the settlement agreement had to be in writing and signed by the parties to that contract because it transferred real property. Furthermore, the court found that the dismissal was pursuant to Ark. R. Civ. P. 12(b)(6) because William pled no fact holding Benson liable for a contract on which he was not in privity with the parties. The court also awarded attorney's fees in the amount of $1,062.50 to Benson's attorney.

Ultimately, William and Deborah reached a property settlement agreement and child-custody and support agreement filed on March 20, 2001. The parties's divorce decree was also filed on March 20, 2001. William indicated at that time that he dismissed his counterclaim against Deborah, thus allowing her to proceed on her original divorce petition.

Although the divorce was finalized on March 20, 2001, the court considered William's second motion to compel answers to interrogatories and for production of documents on March 30,

2001. The court ordered Deborah to produce certain documents by March 23, 2001, (although that was impossible by the date of the order), and ruled that no attorney's fees were due for William's pursuit of this motion. Following this on May 11, 2001, William filed a motion for an extension of time to file an appeal claiming that he did not find out about this order until May 10, 2001, and that too much time had passed to timely file an appeal. He also claimed that he had not discovered the March 20, 2001, order dismissing his third-party complaint against Benson, in which fees were awarded to Benson's attorney, until May 10, 2001, as well. He noted that the time for appeal from both of these orders had passed. Deborah responded on May 25, 2001, and Benson joined in this response on May 29, 2001. On that same day, Benson filed a motion for Rule 11 sanctions against William's attorney, Harry McDermott, claiming that the action against Benson was frivolous. A hearing on these motions was held on June 7, 2001. The court entered its order on June 14, 2001, finding that William had good cause to ask for the extension to file an appeal under Ark. R. App. P.—Civ. 4(b)(3), and allowed him until June 21, 2001, to file that appeal. The docket sheet also indicates that Benson's Rule 11 motion was denied as filed on June 25, 2001. William filed his notice of appeal from the trial court's March 20, 2001, and March 30, 2001, orders on June 18, 2001.

▉ We review chancery cases *de novo* on the record, but we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*

▉ While the trial court's order indicates that the dismissal of William's third-party complaint against Benson was under Ark. R. Civ. P. 12(b)(6), it is clear that the trial court took into account other pleadings, documents, and information when making its decision. As such, it is not a dismissal, but instead a summary judgment. Pursuant to Ark. R. Civ. P. 12(b) and (c), a motion to dismiss is converted to a motion for summary judgment when matters outside of the pleadings are presented to and not excluded by the court. *Francis v. Francis*, 343 Ark. 104, 31 S.W.3d 841 (2000); *McQuay v. Guntharp*, 331 Ark. 466, 963 S.W.2d 583 (1998); *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Ford v. Arkansas Game and Fish Comm'n*, 335 Ark. 245, 979 S.W.2d

897 (1998); *Nelson v. River Valley Bank & Trust*, 334 Ark. 172, 971 S.W.2d 777 (1998). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

## I. William's Appeal against Deborah

■ Although William's notice of appeal included both Deborah and Benson, his arguments on appeal include only his claim against Benson. In fact, he fails to direct any argument towards his appeal from the March 30, 2001, order entered by the trial court directing Deborah to comply with certain discovery requests. The trial court also denied attorney's fees to William for pursuing those discovery requests. As such, because William fails to offer any argument or legal authority to support a claim against Deborah on appeal, we affirm the trial court's ruling from that order. *See Middleton v. Lockhart*, 344 Ark. 572, 43 S.W.3d 113 (2001); *Womack v. Foster*, 340 Ark. 124, 8 S.W.3d 854 (2000).

## II. William's Appeal against Benson

In William's third-party complaint against Benson, he first alleged that Benson, acting with full authority and on behalf of Deborah, misrepresented orally and by letter that the case was settled under William's terms that Deborah pay him $61,500 and, in return, he would sign a quit-claim deed to the house and real estate. However, William then alleged that when Deborah refused to honor the settlement agreement, Benson became personally liable because "he was not acting at the direction and control of the plaintiff and with specific authority to settle all of the parties' property issues . . . even though at all times he represented he was." As such, Benson "breached his implied promise to the defendant . . . that he had the specific authority to bind the plaintiff and was attempting to contractually bind the plaintiff to a settlement agreement . . . pursuant to her instructions." William claimed

damages in the amount of $1,000 plus attorney's fees and costs "resulting from the plaintiff's failure to honor said agreement." It should be noted that William never sued Benson for breach of contract in that he acknowledges that Benson did not have the authority to contract for Deborah. In addition, William never followed through on his breach of contract claim against Deborah — he nonsuited it — so there is no finding that there was a breach of contract here.

■ Although the trial court "dismissed" William's claim against Benson because there was no written contract for the sale of property and Benson was not in privity of contract with William to be liable on the contract, we will only address this second finding by the trial court. We hold that Benson cannot be liable to William for this "breach of implied promise" claim under Ark. Code Ann. § 16-22-310, an attorney-immunity statute. Arkansas Code Annotated § 16-22-310, titled "Liability for civil damages," states:

> (a) No person licensed to practice law in Arkansas and no partnership or corporation of Arkansas licensed attorneys or any of its employees, partners, members, officers, or shareholders shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation, except for:

> (1) Acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations; or

> (2) Other acts, omissions, decisions, or conduct if the person, partnership, or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action. For the purposes of this subdivision, if the person, partnership, or corporation:

>> (A) Identifies in writing to the client those persons who are intended to rely on the services, and

>> (B) Sends a copy of the writing or similar statement to those persons identified in the writing or statement, then the person, partnership, or corporation or any of its employees, partners, members, officers, or shareholders may be held liable only to the persons intended to so rely, in addition to

those persons in privity of contract with the person, partnership, or corporation.

(b) This section shall apply only to acts, omissions, decisions, or other conduct in connection with professional services occurring or rendered on or after April 6, 1987.

This immunity statute for attorneys protects them from civil liability for actions they take during the course of their employment as an attorney. This court has held that "[t]he plain language of Ark. Code Ann. § 16-22-310 requires the plaintiff to have direct privity of contract with 'the person, partnership, or corporation' he or she is suing for legal malpractice." *McDonald v. Pettus*, 337 Ark. 265, 271, 988 S.W.2d 9, 12 (1999). Similarly, this court has held that Ark. Code Ann. § 16-22-310 "enunciates the parameters for litigation by clients against attorneys[.]" *Clark v. Ridgeway*, 323 Ark. 378, 388, 914 S.W.2d 745, 750 (1996).

In *Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001), the plaintiffs sued an attorney under a claim of negligent hiring and supervising of another attorney-employee who defrauded the plaintiffs in an adoption case. The attorney defendant argued in part that she was immune from suit under Ark. Code Ann. § 16-22-310 because the plaintiffs's claims arose from a legal-malpractice action. The plaintiffs argued that Ark. Code Ann. § 16-22-310 provided immunity to attorneys only when they are sued for legal malpractice or professional negligence, and since that claim was neither, the attorney was not immune. This court agreed that the plain language of the provision demonstrates that the immunity provided is limited to suits based on conduct in connection with professional services rendered by the attorney. As such, because the claim was for negligent hiring and supervising of an employee, as opposed to malpractice in the adoption action itself, the attorney defendant was not immune under the statute.

In contrast, however, this court in *McDonald, supra,* found that a decedent's attorney was not liable to the decedent's children individually or as third-party beneficiaries of the estate for alleged negligence in the drafting of the decedent's will. We determined that the children were not in privity of contract with the attorney and, thus, the attorney was immune from suit under Ark. Code Ann. § 16-22-310 for his alleged negligence in drafting the decedent's will. This court stated:

The plain language of Ark. Code Ann. § 16-22-310 requires the plaintiff to have direct privity of contract with "the person, partnership, or corporation" he or she is suing for legal malpractice. Likewise, we have narrowly construed the privity requirement to require direct privity between the plaintiff and the attorney or entity to be held liable for legal malpractice. *See Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996); *Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993). In particular, in Clark we said that "the language of this section [Ark. Code Ann. § 16-22-310(a)] is precise and clear and reveals that the contract contemplated by the statute relates to a contract for professional services performed by the attorney for the client." *Clark, supra.*

*McDonald*, 337 Ark. at 271-272. This court did, however, remand the case to the trial court for further proceedings in the tort and breach-of-contract claims filed by the personal representatives of the estate against the attorney. We did so because the personal representatives brought the claims on behalf of the decedent, because the estate "stood in the shoes" of the decedent, who was in privity of contract with the attorney.

■ These cases define the parameters of the statute by showing that an attorney may not be sued by a third party for his nonfraudulent acts committed during the course of his representation of his client because he was not in privity with the third party. This is what the trial court found here where the trial court determined that Benson was not in privity of contract with William and, thus, could not be liable to him for his professional dealings on that contract.

■ Regarding privity, William argues that general agency law in Arkansas allows this lawsuit. He cites the case of *Hart v. Bridges*, 30 Ark. App. 262, 786 S.W.2d 589 (1990), for the proposition that "Arkansas recognizes the liability of an agent for contracts created outside his authority for a disclosed principal." In *Hart*, the court of appeals determined that a school principal was personally liable on a contract that he had a prospective teacher sign, despite the fact that the principal did not have the authority to hire the teacher without the school board's approval. The teacher, relying on this signed contract, incurred debt by buying a car and other items, believing that he had a job. The school board, however, refused to hire the teacher. The teacher sued the school principal on a breach of contract claim, arguing that the principal was personally liable on the contract. While the court of appeals recognized that the statutes clearly indicate that only a school board can hire a teacher, and that

the teacher was charged as knowing these laws, the court determined that Arkansas's general agency law still bound the principal to the contract. The court of appeals stated:

> Appellant is correct in his assertion that, generally, an agent who contracts in the name of his principal without authority, so that the principal is not bound, may be personally liable to the other contracting party. *See Lasater v. Crutchfield*, 92 Ark. 535, 538, 123 S.W. 394, 395 (1909). In such cases, the law may imply a contract between the injured party and the agent upon the agent's implied warranty of his authority. *Dale v. Donaldson Lumber Co.*, 48 Ark. 188, 192, 2 S.W. 703, 704 (1886).

*Hart,* 30 Ark. App. at 268. Based on this general premise, the court of appeals reversed the trial court's grant of summary judgment finding that questions of fact remained.

█ *Hart* is different from this case, however, for the specific reason that while the court of appeals held that the principal was subject to general agency provisions despite the statutes that stated that only the school board could approve a contract, here Benson, as an attorney, is specifically immune from liability absent fraud or intentional misrepresentation. In other words, there is a specific statute that protects Benson from liability here, whereas in *Hart* the principal had no such protection and was subject to general agency principles.

██ This conclusion, however, does not end the analysis because the lawyer-immunity statute contains two exceptions to the privity requirement. First, no privity is required for "[a]cts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations." Ark. Code Ann. § 16-22-310(a)(1). However, constructive fraud, for example, is not included in this exception because the exception is one for intentional acts. *Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993). This section is clearly inapplicable because William did not assert fraud or intentional misrepresentations in his third-party complaint, but instead asserts an amorphous "breach of implied promise" claim, which necessarily had to arise from Benson's conduct as Deborah's attorney. Therefore, because Benson was only in privity of contract with Deborah for attorney services rendered in connection with her divorce claim, William cannot assert a claim against Benson without some showing of fraud or intentional misrepresentation, which he never alleges in this case.

■ In looking at the trial court's order, the judge effectively applied the immunity statute by finding that there were no facts to show that Benson was in privity of contract with William. As such, regardless of general Arkansas agency law and in the complete absence of any allegations of intentional misrepresentation or fraud, Ark. Code Ann. § 16-22-310 applies to shield Benson in this lawsuit.

## II. Attorney's Fees

■ Finally, William argues that the trial court erred in awarding $1,062.50 in attorney's fees to Benson. William, however, fails to provide any authority as to why this award was unwarranted. The failure to cite authority is sufficient reason to affirm the trial court's ruling on this point. *Middleton, supra; Womack, supra.*

Affirm.

CORBIN, J., not participating.