Warren E. DUPWE v. Frank G. WALLACE and First State Bank, *et al.*

03-594                                                    140 S.W.3d 464

Supreme Court of Arkansas
Opinion delivered January 8, 2004

*Bond & Chamberlin*, by: *Will Bond* and *Neil Chamberlin*; and *Rees Law Firm*, by: *Thomas A. Young*, for appellants.

*Wright, Lindsey & Jennings LLP*, by: *Gordon S. Rather, Jr.* and *James R. Van Dover*, for appellees first State Bank, Parkin Bancorp, Inc., William N. Griffin, and certain others.

*Rieves, Rubens & Mayton*, by: *Elton A. Rieves IV*, for appellee/cross-appellant Frank G. Wallace.

JIM HANNAH, Justice. Bankruptcy Trustee Warren E. Dupwe appeals a summary judgment finding that he is judicially estopped from pursuing the tort claims of Chapter 7 bankruptcy petitioners Barry L. and Deborah L. Nix. The trial court found that when the Nixes failed to list claims against First State Bank, and its employees ("First State") in their bankruptcy petition, any future suit on the claim was precluded by judicial estoppel. Dupwe's tort action in Crittenden County was initially filed by the Nixes after their bankruptcy case was closed; however, when First State objected to the Nixes bringing the action after their discharge in bankruptcy, the bankruptcy case was reopened, and bankruptcy trustee Dupwe was substituted in the place of the Nixes as plaintiff in the lawsuit.

A *prima facie* case of judicial estoppel includes four elements:

1. A party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case;

2. A party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage;

3. A party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and,

4. The integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken.

First State offers evidence that the petition signed under oath fails to include the cause of action now pending against First State. No evidence of intent is offered by First State. Rather, First State argues that intent may be inferred from the facts. The facts only show the cause of action was not listed, but do not show why. The elements of the *prima facie* case were not presented. There are questions of material fact remaining, and the trial court is reversed.

*Facts*

In April 2000, Barry and Deborah Nix filed a voluntary individual petition under Chapter 7 of the United States Bankruptcy Code for the Eastern District of Arkansas. The petition was filed as a consequence of the failure of Barry Nix's used car business. More specifically, the bankruptcy was required due to Barry's inability to obtain financing in his business, which Barry alleges resulted from the tortious conduct of First State.

Prior to approaching First State, Barry used financing from Auction Finance and Automotive Finance Corporation, to run his business, Nix Auto World. Auction and Automotive Finance provided what Barry characterized as floor plans to purchase vehicles for resale. In March 1999, Barry met with Frank G. Wallace, President of First State to discuss acquiring additional financing of Nix Auto World through First State. Barry was already financing his home through First State.

According to Barry, Wallace agreed to commence financing of Nix Auto World by providing financing for a specific car. Barry alleges that he instructed Auction Finance to negotiate his First State check to pay Auction Finance the amount owed on the car First State agreed to finance. According to Barry, First State did not extend the promised credit, but instead bounced Barry's check to Auction Finance. Barry alleges he made a number of attempts to get First State to pay Auction Finance on the check, and that ultimately, First State did pay Auction Finance. Barry argues,

however, that his relationship with Auction Finance was so damaged by First State's misconduct that he lost his credit with Auction Finance.

Barry next alleges that he went to Wallace to complain about the loss of credit and was assured that First State would provide a line of credit to replace the one lost with Auction Finance. However, Barry alleges that Wallace never provided the credit, which forced the Nixes to file bankruptcy.

In the bankruptcy petition, the Nixes responded "no" to the question of whether they had contingent or unliquidated claims. In their statement of financial affairs in the petition, they responded "none" to a request to list all suits to which the debtor was a party within one year immediately preceeding the filing of the bankruptcy case.

Dupwe was appointed bankruptcy trustee in the Nixes' bankruptcy case, and the case was brought to a close by a final decree entered August 25, 2000. On February 27, 2002, the Nixes filed a complaint against First State, Wallace, and other employees of First State, asserting fraud and other misconduct arising from the dispute with the Nixes over financing of business and personal debts.

On April 19, 2002, both First State and Wallace filed a pleading called a motion for summary dismissal, asserting a lack of standing and judicial estoppel. Neither First State nor Wallace provided any cite to authority for a motion for summary dismissal. First State and Wallace challenged the Nixes' right to sue on a claim that predated the bankruptcy. In response, the Nixes reopened their bankruptcy case, and on January 31, 2003, an order was entered granting the Nixes' motion to substitute Dupwe as the plaintiff in the case. The Nixes are no longer parties to the present case. The motions for summary dismissal were treated as motions for summary judgment and granted without prejudice on March 5, 2003. Dupwe appeals.

First State and Wallace asserted in their motions for summary dismissal that they were entitled to summary dismissal based on both judicial estoppel and standing. The trial court decided the issue on judicial estoppel, and there was no ruling on the issue of standing. Therefore, the only issue before this court is whether the trial court erred in its application of judicial estoppel.

This court has jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(b)(1)(5)(2003). Although this case was filed in the court of appeals, Dupwe moved to transfer this case to the supreme court because the issue of when judicial estoppel applies needed further development and posed issues of first impression. The motion was granted.

## Standard of Review

The motions for summary dismissal had affidavits attached. It is well settled that where the parties present affidavits and other matters outside the pleadings to the circuit court on a motion to dismiss, we can and will treat the motion as one for summary judgment. *Coats v. Gardner*, 333 Ark. 581, 970 S.W.2d 802 (1998); *see also* Ark. R. Civ. P. 12(b) and (c) (2003). In *Neilsen v. Berger-Nielsen*, 347 Ark. 996, 69 S.W.3d 414 (2002), this court recently stated the standard of review on review of summary judgment:

> Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Ford v. Arkansas Game and Fish Comm'n*, 335 Ark. 245, 979 S.W.2d 897 (1998); *Nelson v. River Valley Bank & Trust*, 334 Ark. 172, 971 S.W.2d 777 (1998). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

*Nielsen*, 347 Ark. at 1003-1004.

## Judicial Estoppel

In its motion for summary dismissal, First State argued that the Nixes were judicially estopped from prosecuting their lawsuit because they failed to list the cause of action as an asset in their

bankruptcy petition in the federal court. The term "judicial estoppel" is found in six of this court's opinions. *McLane v. Davis*, 353 Ark. 539, 110 S.W.3d 251 (2003); *Francis v. Francis*, 343 Ark. 104, 31 S.W.3d 841 (2000); *Employer's Surplus Ins. v. Murphy Oil USA*, 338 Ark. 299, 993 S.W.2d 481 (1999); *First Commercial Bank, N.A. v. Walker*, 333 Ark. 100, 969 S.W.2d 146 (1998); *Edwards v. State*, 328 Ark. 394, 943 S.W.2d 600 (1997); *Muncrief v. Green*, 251 Ark. 580, 473 S.W.2d 907 (1971); *Rinke v. Weedman*, 232 Ark. 900, 341 S.W.2d 44 (1960). The court of appeals has mentioned judicial estoppel twice. *Daley v. City of Little Rock*, 36 Ark. App. 80, 818 S.W.2d 259 (1991); *Womack v. First State Bank of Calico Rock*, 21 Ark. App. 33, 728 S.W.2d 194 (1987). None of these cases includes a detailed discussion of judicial estoppel.

■ The best beginning point in our analysis is *Muncrief, supra*, where this court stated that the appellee in that case was asserting judicial estoppel, "by which a party may be prevented from taking inconsistent positions in successive cases with the same adversary." *Muncrief*, 251 Ark. at 583-84. This same language was stated in a similar conclusory fashion in *Murphy Oil, supra*. *Muncrief* was cited in *Murphy Oil*, but judicial estoppel was not applied. In *Daley, supra*, the court of appeals cited *Muncrief*, stating that "judicial estoppel is a doctrine whereby a party may be prevented from taking inconsistent positions in successive cases with the same adversary." *Daley*, 36 Ark. App. at 84. In *Daley* the court of appeals found that the doctrine of judicial estoppel was not applicable. In discussing judicial estoppel in *Daley*, the court of appeals cited to *Rinke, supra* for the proposition that the doctrine of judicial estoppel is of "vague application." *Id.*

■ In discussing estoppel arising from assertion of a position in a former proceeding, this court in *Rinke*, cited to 31 C.J.S. *Estoppel*, § 117 — § 121 (1942). In C.J.S., the doctrine of judicial estoppel was defined as a doctrine that is not strictly of estoppel, but also "partakes rather of the positive rules of procedure based on manifest justice and, to a greater or lesser degree, on considerations of the orderliness, regularity, and expeditious of litigation." 31 C.J.S. § 117 at 378. *Rinke* is the first opinion of this court that contains the term judicial estoppel, and the term is introduced into the opinion by the quotes from C.J.S. In addition to section 117, this court in *Rinke* also cited to 31 C.J.S. § 121 (1942) where we find:

Under the doctrine of judicial estoppel, as distinguished from equitable estoppel by inconsistency, a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary of the assertion sought to be made. However, such estoppel does not operate if the original averment was made inconsiderately or mistakenly; it must have been made knowingly and free of inducement by the opposite party.

31 C.J.S. § 121 at 390. CJS cited to *House v. Wakefield*, 42 Tenn. 325 (1865) in its discussion of judicial estoppel; however, the term "judicial estoppel" is not found in the *House* decision. Careful consideration of *House* is important because the holding in *House* is quite similar to earlier decisions of this court. In *House*, the Tennessee Supreme Court noted that the judgment at issue was:

a judgment regularly rendered upon the solemn admissions of the parties made in the course of the suit, and with the view of such admission being acted upon by the court. The principle is a familiar one that the parties are bound, and even estopped, by their solemn admissions of record made in a cause, either in the pleadings or otherwise.

*House*, 42 Tenn. at 327.

The principle laid out in *House* and characterized as "judicial estoppel" in C.J.S. is not a principle unfamiliar to this court. In *International Harvester v. Burks Motors*, 252 Ark. 816, 481 S.W.2d 351 (1972), this court stated that "a party litigant is bound by his pleadings and the allegations therein and cannot maintain a position inconsistent therewith . . . The court has a right to rely on the statements." *Burks*, 252 Ark. at 821. In *Cox v. Harris*, 64 Ark. 213, 215, 41 S.W. 426 (1897), this court stated, "It is a familiar principle of law that one is not, as a rule, allowed to avail himself of inconsistent positions in a litigation concerning the same subject matter." In *Benton v. State*, 78 Ark. 284, 94 S.W. 688 (1906), this court stated that "[a] party cannot, even in a criminal case, take inconsistent positions and play fast and loose with the court." *Benton*, 78 Ark. at 691.

The doctrine against inconsistent positions has been developed in Arkansas. In *Tennessee v. Barton*, 210 Ark. 816, 198 S.W.2d 512 (1946), this court refused to allow Barton to challenge the

validity of a portion of a Utah divorce decree that he "especially prayed" be given full faith and credit in an earlier action on a petition to recover the dower fund. In *Rudolph v. Kelly*, 144 Ark. 296, 222 S.W. 42 (1920), this court stated that a party would not be allowed to argue that he did not sell a car and then argue that even if he did sell the car, the sale failed by reason of fraud. This court stated, "A party will not be allowed in this manner to play fast and loose in a lawsuit." *Rudolph*, 144 Ark. at 300. Similarly, under federal bankruptcy law judicial estoppel is applied to prevent litigants from "playing fast and loose with the courts." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3rd Cir. 2003).

Research of earlier law in Arkansas and the United States reveals that the principle of law currently characterized as the doctrine of "judicial estoppel" existed previously but was characterized as a branch of the doctrine against inconsistent positions. The doctrine against inconsistent positions is much broader than judicial estoppel. Judicial estoppel prohibits a party from manipulating the courts through inconsistent positions to gain an advantage. *Barton, supra*. The doctrine against inconsistent positions may also apply to positions taken outside litigation. In *Wendworth v. City of Fort Smith*, 256 Ark. 735, 510 S.W.2d 296 (1974), appellants were estopped from denying in a lawsuit that a strip of land was a dedicated public street where the appellants had in a public proceeding preceding the lawsuit objected to a proposal to close or vacate the strip of land. In *Potts v. Rader*, 215 Ark. 160, 162, 219 S.W.2d 769 (1949), this court stated, "The appellants cannot claim title to part of the land in reliance upon the deed and at the same time claim the rest upon the theory of its invalidity." In *Potter v. Easley*, 288 Ark. 133, 137, 703 S.W.2d 442 (1986) this court stated, "Potter cannot be allowed to take inconsistent positions by taking part in the bidding in its early stages and then repudiating the proceeding when the bidding reached what he considered a reasonable figure." Likewise in *Dicus v. Allen*, 2 Ark. App. 204, 209, 619 S.W.2d 306 (1981), the court of appeals stated, "We believe that it would be inherently unfair to permit appellees to take these inconsistent positions, and we, therefore, hold that they are estopped from rejecting the Whitfield survey when they had relied on it only one year before their dispute arose with Appellants." In *Crain v. Foster*, 230 Ark. 190, 322 S.W.2d 443 (1959), this court discussed that portion of the doctrine against

inconsistent positions that states, "one who, with knowledge or notice of the facts, accepts or retains the benefit of a transaction, is estopped to deny the force and validity of the transaction." *Crain*, 230 Ark. at 446. In *Crain* this court cited 19 Am. Jur. *Estoppel* § 64, p. 682 (1939) in a footnote. In section 64 is a statement that the rule against accepting a benefit and then challenging the validity of the transaction is "obviously a branch of the rule against assuming inconsistent positions." 19 Am. Jur. *Estoppel* § 64 at 682. The discussion in Am. Jur. continues noting that estoppel arising from the rule against assuming inconsistent positions is also applied to "prevent one who accepts the benefit of a judgment or decree from questioning its validity or opposing the enforcement of its terms." 19 Am. Jur. *Estoppel* § 64 at 690. Thus, it is apparent that the rule against assuming inconsistent positions in litigation, or in other words judicial estoppel, is a branch of the doctrine against inconsistent positions. While the term judicial estoppel has not often been used by this court, the principle against allowing parties to take inconsistent positions in litigation is not a principle of law unfamiliar to this court.

■ The purpose behind judicial estoppel is protection and preservation of the judicial process. This is evident in cases such as *Burks, supra; Rudolph, supra; Benton, supra*, where this court expressed concern about parties playing fast and loose with the courts and that a court has the right to rely on representations made in court. Other courts have also held that the doctrine of judicial estoppel protects the judicial process. *See New Hampshire v. Maine* , 532 U.S. 742 (2001); *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. October 28, 2003); *Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234 (Ct. App. Ind. 1998).

### Factors

Having determined that the doctrine of judicial estoppel is merely a continuation of existing law previously set out under the doctrine against inconsistent positions, we must address how the doctrine will be applied in this case. It is clear under cases such as *Benton, Barton,* and *Burks*, that this court examines the intent of the person taking inconsistent positions and will not allow a person to play fast and loose with the courts. The United States Supreme Court and other courts have attempted to lay out general guide-

lines. In *New Hampshire*, the United States Supreme Court provided the following factors to consider:

1. A party's position must be clearly inconsistent with the earlier position;

2. A party's earlier position must have been judicially accepted such that the inconsistent position in the later proceeding creates the perception that the first or second court was misled; and

3. A party seeking to assert an inconsistent position must derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Similar factors were laid out in 1920. The elements required to show inconsistent positions in former judicial proceedings were set out in 21 C.J. *Estoppel*, § 233 at 1229-30 (1920):

1. The position must have been successfully maintained in a former trial;

2. The positions in a judicial determination must be clearly inconsistent;

3. The parties must be the same; and

4. The same questions must be involved.

 In light of the cited Arkansas precedent, and considering the path taken by foreign jurisdictions, we conclude that the following elements must exist to state a *prima facie* case:

1. A party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case;

2. A party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage;

3. A party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and

4. The integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken.

We first consider the element of a clearly inconsistent position. First State cites cases from other jurisdictions in implying that the law applies an objective standard in filling out the bankruptcy petition, or in other words, that the law requires a petitioner to list all potential claims whether he or she is aware of them or not. However, what is at issue is the application of judicial estoppel in Arkansas, and thereunder, the issue is whether failing to reveal the causes of action against First State constitutes a clearly inconsistent position. The application of judicial estoppel requires a showing by the party seeking to invoke judicial estoppel that the petitioner acted fast and loose with the courts. *Barton, supra.* In other words, a petitioner's subjective intent in failing to list claims is at issue in Arkansas.

First State cites a number of federal cases and fails to cite any of Arkansas's earlier relevant cases. At issue is conduct in a bankruptcy proceeding. On the Statement of Financial Affairs, question 4 asks:

> List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case.

The Nixes answered, "none." This was an accurate answer because no suit was or had been pending at that time. The next relevant question is on Schedule B — Personal Property. Question 20 asks:

> Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to set-off claims. Give estimated value of each.

There is nothing in these questions that specifically requests information on potential causes of action. Question 4 speaks to pre-existing litigation and so is not relevant. Question 20 is far less than clear. Question 20 does speak to contingent and unliquidated claims, that would include causes of action. While the positions taken by the Nixes are not consistent, in that they had a cause of action and did not declare it, their position is not clearly inconsistent under judicial estoppel because there is no showing that the omission was not one of mistake or inadvertence.

■ Next, we consider intent. Application of judicial estoppel in Arkansas requires intent. *Barton, supra.* The question is whether the litigant was playing fast and loose with the courts, which requires intent. What is at issue in a bankruptcy setting is whether there was "improper manipulation of the judiciary." *Emergency One, Inc. v. American Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 274 (4th Cir. 2003). Further, the conduct must be "tantamount to a knowing misrepresentation to or even fraud on the court...." *Arboireau v. Adidas-Salomon, A.G.*, 347 F.3d 1158 (9th Cir. November 17, 2003). "[T]he inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Barger, supra,* citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), *Burnes* quoting *Salomon Smith Barney v. Harvey*, 260 F.3d 1302, 1308, (11 th Cir. 2001), *cert. granted and judgment vacated,* 537 U. S. 1085 (2002). (Judgment in *Harvey* was vacated in light of *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) on an issue of arbitration). The doctrine should only be imposed to avoid a miscarriage of justice. *Krystal,* 337 F.3d at 319. Also, the doctrine only applies to "intentional contradictions, not to simple error or inadvertence." *Burnes,* 291 F.3d at 1286; *American Nat'l Bank of Jacksonville v. Federal Dep. Ins. Corp.*, 710 F.2d 1528 (11th Cir. 1983).

■ At the hearing, counsel for First State argued:

> The only document that has — other than the pleadings — the only document that has been filed up to this point is the affidavit from the bankruptcy court clerk.

> As I understand, Mr. Chamberlain is now trying to interject some form of intent into the case when there's nothing to support either the presence or absence of intent because he hasn't made an issue at this point.

> I understand the Court can read the law at that point to say that it does require intent, and then you could reject the motion based upon the fact that there's a genuine issue of material fact. But the record as made right now — there's nothing in the record that supports intent or the lack of intent because there's no documentation. He's tried to interject fraud, and I call the Court's attention to the fact that the bankruptcy schedules are under oath.

And again I'll reiterate that Schedule B, which lists all the assets of the debtors, every page bears both signatures of both debtors, and I submit to the Court that the record supports an application of judicial estoppel.

The parties thus agreed that no evidence of intent was offered. First State then argued further:

May I respond to the point of inadvertence, omission, or neglect? The complaint says several times that the sole reason for that they were compelled to file a bankruptcy petition was the defendant's conduct. If you had a going business that was dependent on a line of credit that had been denied and the reason — and the termination of that line of credit was the reason you filed the bankruptcy petition, how can you forget that?

The trial court agreed, announced that the motion for summary judgment would be granted and added:

Well, I'm going to buy the argument if the sole basis and reason for them taking bankruptcy was because of the wrongful conduct of the bank, surely it was in their mind, and they would know they had a potential claim against the lender. They had a lawyer, I assume.

It is therefore apparent that the trial court's decision was based on a test of "knew or should have known." There is no evidence of an intent to manipulate the judicial process. There are genuine questions of material fact with regard to intent. The trial court erred in finding that summary judgment was proper.

### Suit Pursued by Trustee

Dupwe argues that affirming the trial court will unjustly deny the creditors possible "just compensation." The purpose behind judicial estoppel or the doctrine against inconsistent positions is preservation and protection of the judicial process by stopping parties from gaining an advantage by playing fast and loose with the courts. *Barton, supra; Rudolph, supra; Barton, supra.* This court has made it clear that the courts have a right to rely on representations and statements that parties make to the court. *International Harvestor, supra.* The doctrines are applied to knowing misrepresentations and fraud on the court. *Arboireau, supra.* They are applied to prevent a miscarriage of justice. *Krystal, supra.*

The Nixes are accused by First State of playing fast and loose with the courts in failing to list the causes of action against First State on the bankruptcy petition. The Nixes are also accused of attempting to keep any proceeds for themselves rather than allowing any assets gained by suit to go to the creditors. Thus, First State argues that the lawsuit against it must be estopped to preserve the integrity of the courts. However, the Nixes are no longer parties to this action. Justice would neither be preserved nor protected by estopping trustee Dupwe from pursuing this action. Proceeds from this suit would go to satisfy the claims of secured and perhaps unsecured creditors. The duty of the Chapter 7 bankruptcy trustee is to collect the property of the estate and reduce it to money. 11 U.S.C. 704 (2003). Further, "what creditors receive from the case will often be in direct relation to how well the trustee takes control of the estate. . . ." Norton Bankruptcy Law & Practice, § 65:8 (2nd Ed. 1997). In the case before us, the only party who will substantially benefit from the application of the doctrine of judicial estoppel and the doctrine against inconsistent positions is First State, the party accused of being liable in tort for causing the bankruptcy. If we allow this suit to go forward, the parties who may benefit will be the creditors whom the Nixes are accused of having attempted to deprive of assets due them. Thus, under the facts of this case, the court is unaffected by allowing the suit to go forward, and justice is preserved. Dupwe correctly cites *Taylor v. Comcast Cablevision of Arkansas, Inc.*, 252 F. Supp. 2d 793 (E.D. Ark. 2003), "An overly strict application of judicial estoppel has been criticized as providing a windfall to the alleged wrongdoer and possibly depriving creditors, who are not parties to the nonbankruptcy action of a potential bankruptcy asset." *Taylor*, 252 F. Supp. 2d at 798 (citing Hon. William Houston Brown, Lundy Carpenter, and Donna T. Snow, *Debtor's Counsel Beware; Use of the Doctrine of Judicial Estoppel in Nonbankruptcy Forums*, 75 Am. Bankr. L. J. 197, 216 (2001)). The district court in *Taylor* also justly criticizes the use of judicial estoppel as a technical defense for litigants "seeking to derail potentially meritorious claims." *Taylor*, 252 F. Supp. 2d at 799. Judicial estoppel is intended to protect the integrity of the courts, not to provide "a sword to be wielded by adversaries" in an attempt to avoid potential liability. *Id. Ryan Operations G.P. v.*

*Santiam* — *Midwest Lumber Co.,* 81 F.3d 355 (3rd Cir. 1996). Justice is best served by allowing Dupwe to pursue this suit against First State.

Reversed and remanded.

BROWN and IMBER, JJ., concurring.

DICKEY, C.J., not participating.

ROBERT L. BROWN, Justice, concurring. Because the bankruptcy court has reopened the bankruptcy estate and appointed the Trustee in bankruptcy to replace the Nixes as the plaintiff for the purpose of prosecuting the lender–liability suit against the appellees, I concur in the result reached by the majority. I can find no case where judicial estoppel has been applied when the bankruptcy estate has been reopened and the Trustee has taken over as party-plaintiff. Two things occur to me under this scenario. First, because the bankruptcy court has agreed that the suit, with the Trustee as plaintiff, can go forward, it is difficult under these circumstances to conclude that the integrity of the bankruptcy court has been impugned. Also, since the Trustee is now the plaintiff and acting on behalf of the bankruptcy estate, I cannot agree that it is the Nixes who are manipulating the system to their advantage. Accordingly, I would not invoke the doctrine of judicial estoppel under the facts of this case.

Where I take issue with the majority opinion is with the blanket statement that there was no evidence of wrongful intent offered by the appellees. I have concluded that the Nixes did take inconsistent positions with their Bankruptcy Schedules and, after bankruptcy, with their lender–liability lawsuit. I further am convinced that this inconsistency raises a *prima facie* case of manipulation of the judicial system, which required a response in the form of proof from the Nixes for purposes of avoiding summary judgment. *See Luna v. Dominion Bank of Middle Tennessee,* 631 So. 2d 917 (Ala. 1993). Clearly, the Nixes knew or should of known they had a cause of action against the appellees for lender–liability before they filed for bankruptcy. Yet, they refused to list this as an asset. Shortly after their debts had been discharged, they filed the lender–liability lawsuit.

In his brief, the Trustee offers several explanations of why the Nixes failed to disclose their cause of action against the bank in their bankruptcy petition:

• they were confused by the bankruptcy legalese on the Bankruptcy Schedule;

• they did not realize a potential lawsuit was an asset; and

• both of the Nixes had only high-school educations.

Having argued these "defenses," the Trustee offered no affidavit or deposition from the Nixes explaining why they had previously sworn that all assets had been disclosed when they had not been. Nor has the Trustee explained why having legal counsel did not cure the Nixes' alleged ignorance about the bankruptcy process.

Nevertheless, because the Trustee is now the plaintiff and because the bankruptcy estate has been reopened by the bankruptcy court, I concur in the result.

ANNABELLE CLINTON IMBER, Justice, concurring. Because there is a genuine issue of material fact with regard to intent and because the trustee in bankruptcy is now the plaintiff, I concur in the result.