David Hugh WILLIAMS *v.*
ARKANSAS DEPARTMENT of CORRECTION

03-674                                              207 S.W.3d 519

Supreme Court of Arkansas
Opinion delivered April 28, 2005

*Appellant,* pro se.

*Mike Beebe,* Att'y Gen., by: *Ryan P. Blue,* Ass't Att'y Gen., for appellee.

B ETTY C. DICKEY, Justice. *Pro se* appellant David Williams, an inmate in the Arkansas Department of Correction (ADC), filed a civil-rights action, relying upon the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105 (Supp. 2003), which provides in part:

> (a) Every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress.

Williams alleged that he was denied prescribed medical care or treatment, stemming from the ADC furnishing a wool blanket with sheets sewn over it, rather than the non-wool blanket he allegedly had been prescribed as treatment for a wool allergy. Williams named the ADC, Greg Harmon, Ray Hobbs, Dennis "Corporal" Thompson, Max Mobley, and Sarah Speer, in their official and individual capacities, as defendants in the complaint.

Williams's complaint asserted that he had been issued a prescription for a non-wool blanket through the ADC's infirmary. In response to Williams's prescription, Dennis Thompson, the prison's laundry supervisor, provided Williams with a wool blanket that had cotton sheets sewn over it. Williams argued that the blanket has continued to expose him to wool and has resulted in continued rashes and itching. Williams contended that each of the named defendants had a statutory duty to provide him with a non-wool blanket under Ark. Code Ann. § 12-27-101 (Repl. 2003), which states, in part:

> (a)(1) The purpose of this act is to establish a Department of Correction that shall assume the custody, control, and management of the state penitentiary, execute the orders of criminal courts of the State of Arkansas, and provide for the custody, treatment, rehabilitation, and restoration of adult offenders as useful law-abiding citizens within the community.

Williams attached a number of exhibits to his complaint, including grievances he had filed with Greg Harmon, the prison warden, which were then appealed to Ray Hobbs, the Chief Deputy Director of the ADC, and a letter Williams had written to Max Mobley, Deputy Director of Health/Treatment for the ADC.

Appellee Sarah Speer is the administrator of the prison infirmary and is employed by a private company contracted to provide medical services to the ADC. She filed a separate motion to dismiss in response to Williams's complaint, asserting that Williams failed to establish deliberate indifference, and that he failed to exhaust his administrative remedies. The remaining defendants (the ADC defendants), in their motion to dismiss, attached an exhibit and requested a protective order barring discovery while their motion was pending. The ADC defendants's motion asserted a failure to state a claim under Ark. R. Civ. P. 12(b)(6); in the alternative, should the trial court not exclude matters outside the pleadings, they requested that the trial court

treat the motion as one for summary judgment. The ADC defendants argued that: (1) the ADC was immune from suit under the Arkansas Civil Rights Act; (2) the ADC was not a person within the meaning of the Arkansas Civil Rights Act; (3) Williams could not enforce federal rights under the Arkansas Civil Rights Act; (4) the defendants were immune from monetary liability in their official capacities; (5) the defendants were entitled to statutory immunity in their official capacities; (6) the defendants did not violate Williams's constitutional rights; and, (7) the defendants were entitled to qualified immunity in their individual capacities. Williams's response conceded that the ADC defendants' first four arguments were valid.

The trial court denied Williams's motion to compel discovery, granted Speer's motion to dismiss, and, granted the ADC defendants' motion to dismiss. In granting Speer's motion to dismiss with prejudice, the trial court found that Speer's obligation was to assure that Williams's diagnosis was made known to the ADC, and that she had discharged those duties. The trial court found that Williams's complaint failed to state a cause of action and granted the ADC defendants's motion to dismiss. Specifically, the trial court found that: (1) Harmon had responded to Williams's grievance by indicating he understood Williams had received a blanket complying with his medical prescription; (2) no further action was warranted by Mobley because of Harmon's response; (3) Hobbs had responded indicating he understood Williams had been furnished a blanket acceptable to him; and, (4) Thompson had no way of knowing that the issuance of a blanket would cause harm to Williams. Williams moved for reconsideration, which the trial court denied as repetitive and frivolous.

On appeal, Williams asserts error, as to all defendants, in denying him further discovery. As to Speer, Williams argues that the trial court considered evidence not in the record, and that the trial court improperly dismissed the complaint with prejudice. Williams also asserts that the trial court erred in holding that Thompson was not sufficiently aware that injury would result from issuance of the blanket. Finally, Williams argues that the trial court erred in finding that the ADC defendants had satisfied their duties toward him.

While the trial court's order indicates that Williams's complaint was dismissed under Ark. R. Civ. P. 12(b)(6), there were matters outside the pleadings which were presented to the trial court and which were not excluded. For example, Williams

attached a number of grievances to his complaint, along with several documents indicating medical restrictions that he referred to as "non-wool prescriptions," a sick-call response, and a letter. The grievances were necessary since Williams was required to show that he had exhausted his administrative remedies. The ADC defendants attached a grievance to their motion to dismiss. Speer attached a lab report and other documents from Williams's medical records to her response to his motion for a temporary restraining order. There was no objection to the attachments, and the trial court not only did not exclude the information in these documents, but referenced information from the grievances in its order. As such, it is not treated as a dismissal, but instead as a summary judgment. *Nielsen v. Berger-Nielsen,* 347 Ark. 996, 69 S.W.3d 414 (2002).

This court has repeatedly held that summary judgment is appropriate when there are no genuine issues of material fact, and the moving part is entitled to judgment as a matter of law. *Dupwe v. Wallace,* 355 Ark. 521, 140 S.W.3d 464 (2004); *Nielsen, supra.* Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Summary judgment is not proper where the evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Jackson v. Ivory,* 353 Ark. 847, 120 S.W.3d 587 (2003); *Thomas v. Sessions,* 307 Ark. 203, 818 S.W.2d 940 (1991).

Before addressing whether the defendants were entitled to statutory immunity in their official capacities, or, qualified immunity in their individual capacities, this court must find that Williams pled facts sufficient to satisfy a finding of a constitutional violation. Williams argues that he was subjected to "cruel and unusual punishment" proscribed by the Arkansas Constitution through the denial of prescribed medical care or treatment.

The leading case on inadequate medical care to inmates is *Estelle v. Gamble,* 429 U.S. 97 (1976), where the United States Supreme Court found that deliberate indifference to serious medi-

cal needs of prisoners constitutes a violation of the prohibition against cruel and unusual punishment found in the Eighth Amendment to the United States Constitution. A prisoner must show both that he has a serious medical need and that prison officials acted with deliberate indifference toward that need. *Id.* Prisoners are entitled to be free from the unnecessary and wanton infliction of pain, but they are not entitled to unqualified access to health care. *Id.; Brew v. Blackwell,* 836 F. Supp. 631 (S.D. Iowa 1993).

In *Shepherd v. Washington County,* 331 Ark. 480, 962 S.W.2d 779 (1998), this court rejected the federal standard of "deliberate indifference" for cases arising under the Arkansas Civil Rights Act. Instead, this court opted for a standard of "conscious indifference," as defined by this court's previous opinions. In order to demonstrate that a defendant acted with conscious indifference, a plaintiff must show that the defendant "knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct in the reckless disregard of the consequences from which malice can be inferred." *Shepherd,* 331 Ark. at 504 (quoting *Dongary Holstein Leasing Inc. v. Covington,* 294 Ark. 112, 732 S.W.2d 465 (1987), *rev'd on other grounds, Quinn Companies, Inc. v. Herring-Marathon Group, Inc.,* 299 Ark. 431, 773 S.W.2d 94 (1989)). Therefore, malice can be inferred either from conscious indifference to the consequences of one's actions or from a reckless disregard of those same consequences. *Id.*

A medical need is serious if it is a condition that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Mahan v. Plymouth County House of Corrections,* 64 F.3d 14 (1st Cir. 1995); *Blackmore v. Kalamazoo County,* 390 F.3d 890 (6th Cir. 2004); *Johnson v. Busby,* 953 F.2d 349 (8th Cir. 1991); *Hunt v. Uphoff,* 1999 F.3d 1220 (10th Cir. 1999).[1] Not every ache and pain or medically recognized condition supports a

---

[1] We note that other Circuits have defined the term "serious medical need." *See Chance v. Armstrong,* 143 F.3d 698 (2d Cir. 1998) (a medical need must be, in objective terms, sufficiently serious, meaning that it is a condition of urgency that may result in death, degeneration, or extreme pain); *Young v. City of Mount Ranier,* 238 F.3d 567 (4th Cir. 2001) (a medical need must be sufficiently serious to require medical treatment or one that poses substantial risk of serious injury to health and safety); *Gutierrez v. Peters,* 111 F.3d 1364 (7th Cir. 1997) (a serious medical need is one that had been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the need for

claim of Eighth Amendment violation and the claim must involve a substantial risk of serious harm to the inmate. *Roberson v. Goodman*, 293 F. Supp. 2d 1075 (2003). To evaluate a claim for medical need, the civilized minimum of public concern for the health of prisoners is determined, striking a balance between objective need and cost. *Ralston v. McGovern*, 167 F.3d 1160 (1999).

█ Here, Williams has not shown a serious medical need that would support a claim of a violation of Ark. Const. Art. 2, § 9 through Ark. Code Ann. § 16-123-105 (Supp.2003). Viewing the evidence and pleadings in the light most favorable to Williams, his condition is not one that mandates treatment, even though it may have been diagnosed by a doctor. While allergies can be life-threatening, there is no allegation that Williams's case is so severe. Based on the evidence presented to the trial court, Williams does indeed suffer from discomfort and rashes, but he has been provided with adequate treatment for those symptoms. Williams's condition simply does not rise to the level of a serious medical need.

In *Roberson v. Goodman, supra,* the United States District Court of North Dakota held that the mere fact that a prison inmate disagrees with the course of treatment does not suffice to allege a serious medical need. Even conceding that the itching continues unabated, Williams has not shown any indication, other than his own conclusory allegations of the suffering being extreme, that his condition is more than mere discomfort. There is simply no substantial risk of serious harm to him if he goes untreated. Speer presented evidence that Williams was not, in fact, allergic to wool; however, even if we accepted Williams's contention that he is allergic, his condition simply does not rise to the level of a serious medical need. The cases that find a condition involving only discomfort, rather than those situations that are potentially life

medical attention, where the failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain); *Clement v. Gomez,* 298 F.3d 898 (9th Cir. 2002) (whenever the failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain); *Brown v. Johnson,* 387 F.3d 1344 (11th Cir. 2004) (a serious medical need is one that has been diagnosed by a physician as requiring or mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention and if left unattended, poses a substantial risk of harm).

threatening, where an inmate's condition rises to the level of serious medical need, all involve a more serious component than any demonstrated by Williams.

In *Shabazz v. Barnauskas,* 790 F.2d 1536 (11th Cir. 1986) (*per curiam*), the prisoner filed an Eighth Amendment claim alleging that the prison's policy that forces him to shave his beard has resulted in his developing sensitive skin. The prisoner alleged that he had been medically diagnosed with having "pseudofolliculitis barbae," or "shaving bumps." *Id.* at 1538. He alleged that shaving aggravates this condition by causing bleeding, inflammation, irritation, ingrowing of hairs, infection, purulence, and pain. The prisoner claimed that the physicians had issued him a non-shaving permit and that the prison officials, by not honoring that permit, were being deliberately indifferent to his serious medical condition. The Eleventh Circuit disagreed and held that the prisoner's condition was not a serious medical need.

We hold that no reasonable person would conclude that any of the evidence presented in this case demonstrates a "serious medical need." Since Williams has not met the standard for a constitutional violation claim, we do not address the remaining points of error. The trial court did not err in granting the motions for summary judgment, whether or not it may have announced the wrong reason. *Jegley v. Picado,* 349 Ark 600, 80 S.W.3d 332 (2002). Since Williams did not have a claim, the matter is ended with prejudice. *See West v. Searle & Company,* 305 Ark. 33, 806 S.W.2d 608 (1991). Accordingly we affirm, with the modification that all claims are dismissed with prejudice.

Affirmed as modified.