

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-16-419

| | |
|---|---|
| JENNIFER POFF TALLEY, BARRY TALLEY, NATHAN L. POFF, JR., ROSE M. LEW, AND JOHN LAURENCE POFF<br><br>APPELLANTS<br><br>V.<br><br>CAROLYN PEEDIN, ET AL.<br>APPELLEES | **Opinion Delivered** FEBRUARY 8, 2017<br><br>APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT<br>[NO. 12CV-12-141]<br><br>HONORABLE TIM WEAVER, JUDGE<br><br>AFFIRMED |

## DAVID M. GLOVER, Judge

There is a long history of litigation between appellants, who are the children (Poff children) of Dr. Nathan Poff, Sr. (Dr. Poff), and his first wife, Lou Veta Poff Moon (Lou Veta), and appellees, Carolyn Poff Peedin (Carolyn), who was Dr. Poff's second wife, and her current husband, Merlin Peedin. This latest action involves contested mineral rights. It originated when SEECO, Inc., filed a complaint for interpleader and declaratory judgment to have the trial court determine to whom SEECO should pay natural-gas production royalties regarding designated property in Cleburne County. All of the individuals and entities named by SEECO as having a potential interest in the property are traceable to Dr. Poff. One group consists of Dr. Poff's children with Lou Veta (who now claim their ownership by inheritance from their mother). The other group consists of Dr. Poff's second wife, Carolyn, (who claims her interest by inheritance from Dr. Poff), and her current husband, Merlin Peedin. We dismissed an earlier appeal in this case on April 22, 2015, concluding there was no final order. *Talley v. Peedin*, 2015 Ark. App. 261.

On April 4, 2016, the trial court entered an "Amended Final Judgment," which describes the property at issue as follows:

The Court finds that the mineral interest at issue is located in Section 12-T10N-R8W, Cleburne County, Arkansas, and is particularly described as:

**Tract 1:** The North Half of the Northeast Quarter (N ½ NE ¼), Southeast Quarter of the Northwest Quarter (SE ¼ NW ¼), and the North Half of the Northwest Quarter of the Northwest Quarter (N ½ NW ¼ NW ¼), containing 140 acres in the aggregate, more or less.

**Tract 2:** The Northeast Quarter of the Northwest Quarter (NE ¼ NW ¼), containing 40 acres, more or less.

**Tract 3:** The South Half of the Northeast Quarter (S ½ NE ¼), containing 80 acres, more or less.

**Tract 4:** The South Half of the Northwest Quarter of the Northwest Quarter (S ½ NW ¼ NW ¼), and the North Half of the Southwest Quarter of the Northwest Quarter (N ½ SW ¼ NW ¼), containing 40 acres in the aggregate, more or less.

The disputed mineral interests involve a one-fourth (1/4) interest in Tracts 1, 2, and 3 and a three-sixteenth (3/16) interest in Tract 4.

The trial court found that ownership of the undivided one-fourth (1/4) interest in the minerals underlying Tract 3 is held by Carolyn; that ownership of the undivided one-fourth (1/4) interest in the minerals underlying Tracts 1 and 2, as well as the three-sixteenth (3/16) interest in the minerals underlying Tract 4 are held by MAP2009-OK; that the lease interests arising from Carolyn and her successors-in-interest are valid, *i.e.*, XTO Energy, Inc., holds an undivided eighty-five percent (85%) leasehold interest in the minerals in Tracts 1, 2, 3, and 4; that Shaw Farms, Inc., holds an undivided seven and one-half percent (7½%) leasehold interest in the minerals in Tracts 1, 2, 3, and 4; and that Boston Mountain Oil & Gas, LLC, has an undivided seven and one-half percent (7½%) leasehold interest in the

minerals in Tracts 1, 2, 3, and 4, with a one hundred percent (100%) wellbore reservation in the GreenBay Packaging Well #10-08#3-13H12.

The trial court further found that the Poff children have no ownership interest in the subject minerals and that all leases involving the subject minerals executed by the Poff children in favor of Sedna Energy, Inc., and Chesapeake Exploration, LLC, and the later assignments of those leases to Barlow Projects, Inc., XTO Energy, Inc., and BHP Billiton Petroleum (Fayetteville), LLC, are null and void. The trial court incorporated by reference its amended findings of fact and conclusions of law into the "Amended Final Judgment," which included the legal conclusions that the Poff children were estopped from pursuing an ownership interest in the subject mineral interests under the doctrines of res judicata, collateral estoppel, judicial estoppel, and equitable estoppel. Finally, the trial court awarded attorney's fees and costs to Carolyn in the amount of $5,000 plus postjudgment interest.

This appeal followed, with the Poff children contending 1) the trial court erred in not finding their mother owned half the mineral rights at the time of her death; 2) they are not estopped from claiming ownership of their mother's mineral interests based on the previous lawsuit regarding their father's interest in the mineral rights; and 3) the attorney's fee award of $5,000 should be reversed because a justiciable controversy existed and there was no finding or evidence of bad faith. We affirm.

Dr. Poff's marriage to Lou Veta took place in 1953. In 1971, he acquired by warranty deed, in his name only, 100% of the surface rights to the Cleburne County property that is in dispute, along with one-half of the mineral interests in Tracts 1, 2, and 3, and three-eighths of the mineral interests in Tract 4.

On October 9, 1973, Dr. Poff and Lou Veta conveyed the Cleburne County property by form-type warranty deed to William Clyde Glover. The deed provided in pertinent part

> THAT we, Nathan L. Poff and Lou Veta Poff, his wife, for and in consideration of the sum of . . . do hereby grant, bargain, sell and convey unto said William Clyde Glover, grantees, and unto his heirs, successors, and assigns forever, the following described lands situated in Cleburne County, Arkansas, to-wit:
>
> . . . .
>
> Grantors reserve one-half of all oil, gas and mineral rights they may own.
>
> . . . .
>
> And we hereby covenant with said grantees that we will warrant and defend the title to said lands against all unlawful claims whatever.
> And Lou Veta Poff wife of the said Nathan L. Poff for and in consideration of said sum of money, do[es] hereby release and relinquish unto the said grantee all rights of dower and homestead in and to said lands.

The 1973 deed was filed for record on October 16, 1973.

Dr. Poff and Lou Veta divorced by decree entered on February 15, 1980. They entered a property-settlement agreement that was incorporated into the decree. The reserved mineral rights from the 1973 deed to Glover were not specifically mentioned in the property-settlement agreement. Paragraph 1 provided, "Plaintiff is to own in his own right that personal property and real estate now owned by him and in his possession, and defendant is to own in her own right that personal property and real estate now owned by her and in her possession." Following the divorce, Dr. Poff married Carolyn, appellee.

Lou Veta died in 1989, and her will provided in pertinent part, "I give all the rest and remainder of my property, whether real or personal, wherever situated, which is my own individual property in which my husband, Albert L. Moon, has no interest, to my

4

children, Nathan LeRoy Poff, Jr., John Laurence Poff and Jennifer Lynn Beam, in equal shares, share and share alike."

Dr. Poff died in 1994, and disputes arose between the Poff children and Carolyn. They eventually entered a family-settlement agreement in 1996. In 2007, more than ten years after the family-settlement agreement had been entered, the Poff children filed a complaint against Carolyn to quiet title to minerals in the Cleburne County property that was the subject of the 1973 deed. The basis for their claim as stated in their complaint was that Dr. Poff's ownership of the mineral interests was not known or discovered during the probate of his estate; that they were each the owners of an undivided one-third interest in and to the *undivided one-eighth interest* in the oil, gas, and other minerals owned by Dr. Poff at the time of his death; and that their ownership to the mineral interests should be quieted as against the claims, if any, of Carolyn and any other persons who might assert claims against such mineral interests. At the February 19, 2009 quiet-title hearing, the attorney for the Poff children stated, "The real estate interest that's involved is an undivided *one-fourth interest* in 615 acres of land that is located out in the east part of Cleburne County and, actually, I think a part of it is also in Independence County as well. . . . I think I misstated the interest in the complaint, *I said one-eighth and I think I should have said one-fourth. At any rate it is a one-fourth interest in 615 acres.*" (Emphasis added.) In answering the complaint, Carolyn asserted that Dr. Poff's estate was settled and fully resolved by the execution of the family-settlement agreement and that the Poff children therefore had no claim or interest in any minerals that may have been owned by Dr. Poff at the time of his death.

5

The trial court in that case entered its order on April 14, 2009, concluding that the relief sought by the Poff children in their quiet-title action should be denied and decreeing that Carolyn was the "sole and rightful owner of any undivided interest in and to the oil, gas, and other minerals owned by Dr. Nathan Leroy Poff, Sr. at the time of his death." The Poff children appealed, and our court affirmed the trial court's decision in an opinion entered on April 28, 2010. *Poff v. Peedin*, 2010 Ark. App. 365, 374 S.W.3d 879.

As mentioned earlier, the instant case was initiated by SEECO as a complaint in interpleader and declaratory judgment to determine to whom it should pay royalties for its production of natural gas because both the Poff children and Carolyn and Merlin Peedin had leased the contested mineral interests to various entities. The Poff children counterclaimed and cross-claimed for declaratory judgment, claiming they owned the mineral rights from their mother's estate (Lou Veta) and were entitled to the royalties therefrom. Carolyn answered and cross-claimed, denying that Lou Veta owned any of the mineral interests. On February 28, 2013, the Poff children filed a motion for partial summary judgment. The case was heard by the trial court on December 16, 2013; judgment was entered on April 17, 2014; and the Poff children timely filed their initial notice of appeal. As mentioned earlier, our court previously dismissed the appeal without prejudice, concluding that the trial court's failure to identify the ownership interests of certain designated defendants prevented the judgment from being final. *Talley v. Peedin*, 2015 Ark. App. 261. On April 4, 2016, the trial court entered its "Amended Final Judgment"; the trial court also entered amended findings of fact and conclusions of law.

We review a trial court's findings of fact from a bench trial for clear error, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Ark. R. Civ. P. 52(a); *Poff v. Peedin*, 2010 Ark. 136, 366 S.W.3d 347. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Poff v. Peedin*, 2010 Ark. App. 365, 374 S.W.3d 879.

The first two points of appeal are interrelated and can best be discussed together. For their first point of appeal, the Poff children contend the trial court erred in finding that their mother, Lou Veta, did not own half of the mineral rights at the time of her death; for their second point of appeal, they contend they were not estopped from claiming ownership of their mother's mineral interests based on the previous lawsuit regarding Dr. Poff's interest in the mineral rights. In order to fully understand why we are affirming the trial court's decision, it is necessary to understand the position taken by the Poff children under their first point of appeal, why we find no error in the trial court's conclusion about their mother's ownership interests in the minerals, and why their claims are therefore barred by the doctrine of res judicata and other forms of estoppel.

Included in the trial court's extensive findings of fact are the following:

> 17. On July 18, 1994, Dr. Nathan L. Poff, Sr. died in Cleburne County, Arkansas, survived by his widow, Carolyn Poff Peedin, and the Poff Children. His estate was probated as case number P 94-51 in Cleburne County, Arkansas. The Poff Children contested the estate.

> 18. On July 8, 1996, the Poff Children and Carolyn Poff Peedin entered into a family settlement agreement releasing the Poff Children's claim to "any and all" interest in the estate of Dr. Nathan L. Poff, Sr. in exchange for $60,000. (Trial Exhibits 16, 35, 36, and 46.)

19.  On August 7, 2007, the Poff Children filed a suit against Carolyn Poff Peedin in Cleburne County Case No. CV 2007-211-2 to quiet title to minerals reserved in the 1973 deed.  The Poff Children alleged ownership of all minerals owned by Dr. Nathan L. Poff, Sr.  (Trial Exhibit 26.)

20.  In their complaint, the Poff Children alleged that Dr. Poff owned a one-eighth mineral interest.  However, during the trial, the Poff Children stated to the trial court that they had "misstated the interest in the complaint" and that "Dr. Poff had indeed reserved this undivided one-fourth interest."  (Trial Exhibit 26, 27.)

21.  In the 2007 quiet title action, the Poff Children sought to gain by the litigation against Carolyn Poff Peedin all the mineral interests that were excepted from the conveyance made in the 1973 deed.  (Trial Exhibit 27.)

22.  The case was resolved by declaratory judgment.  (Trial Exhibit 28.)  The trial court denied the Poff Children's petition to quiet title, and quieted title in Carolyn Poff Peedin as "sole and rightful owner of any undivided interest in and to the oil, gas, and other minerals owned by Dr. Nathan Leroy Poff, Sr. at the time of his death."  The basis of the trial court's ruling was that the family settlement agreement entered in the probate of Dr. Poff's estate foreclosed any further claims by the Poff Children to the assets of the estate.  (Trial Exhibits 26, 27, 28, 37, and 38.)

23.  The Poff Children appealed the trial court's ruling.  During their appeal, the Poff Children represented to the appellate court that their father owned an undivided one-fourth mineral interest.  (Trial Exhibits 27, 38.)

24.  The Arkansas Court of Appeals upheld the trial court's ruling in *Poff v. Peedin*, 374 S.W.3d 879 (Ark. App. 2010).  (Trial Exhibit 40.)  The Arkansas Supreme Court also heard and ruled on an appellate issue in the case at *Poff v. Peedin*, 366 S.W.3d 347 (Ark. 2010), and characterized the interest as an undivided one-fourth interest.  (Trial Exhibit 39.)

. . . .

26.  After having lost all bids to acquire an interest in the subject minerals through their father's estate, the Poff Children pursued their claims in this suit under the theory that they are entitled to an ownership interest through their deceased mother.

27.  In their *Brief in Reply to Response of Carolyn Peedin*, filed on December 13, 2013, three days before the hearing in the present case, the Poff Children stated that the subject mineral interests were acquired by their father in his name, and their mother had a "dower interest" in the reserved minerals "until the divorce."  (See *Brief in Reply*, p. 2-3.)

We are not left with a definite and firm conviction that the trial court made a mistake with respect to these findings of fact.

The Poff children's contention about their mother's ownership interest in the minerals is rooted in their position that, because Lou Veta was shown as a grantor in the 1973 warranty deed, the reservation of mineral rights by "the grantors" created a joint ownership of those minerals in Lou Veta and their father, Dr. Poff—even though it is undisputed Dr. Poff originally acquired the Cleburne County property in 1971 in his name only, creating "only an inchoate dower interest" in both the surface property and the minerals underneath for Lou Veta.

The gist of the Poff children's argument under this point is set forth as follows in their brief:

> The fact that Dr. Poff originally acquired the Cleburne County property in his own name in 1971 does not contradict or even speak to the property interest that Ms. Moon acquired in the 1973 Deed. Originally, because Dr. Poff purchased the property in his name, Ms. Moon acquired only an inchoate dower interest in the property as Dr. Poff's wife. *Evans v. Seeco, Inc.*, 2011 Ark. App. 739, at 6. Ms. Moon's interest changed, however, with the 1973 Warranty Deed, which she executed as a Grantor. Ms. Moon relinquished her dower rights in the deed and, in a joint tenancy by the entirety with her husband, gained a vested property interest through the reservation of mineral rights. The reservation preserved equally the property rights of Dr. Poff and Ms. Moon, not Dr. Poff alone.

All parties agree Lou Veta acquired only an inchoate dower interest when Dr. Poff acquired the property at issue in his name only in 1971. It is the 1973 deed (by which he sold the surface property and reserved a portion of the underlying mineral interests) that is relied upon by the Poff children to further create an ownership interest in the underlying minerals for Lou Veta. It is undisputed that both Lou Veta and Dr. Poff were shown as

grantors in the 1973 deed; however, the deed's language excepting the minerals provides, "Grantors reserve one-half of all the oil, gas, and minerals *they may own*." (Emphasis added.) Moreover, the language relinquishing Lou Veta's dower and homestead rights provides, "And Lou Veta Poff wife of the said Nathan L. Poff for and in consideration of said sum of money, do[es] hereby release and relinquish unto the said grantee all rights of dower and homestead in and to said lands."

If the only interest Lou Veta had in the property at the time of the 1973 deed was an inchoate dower interest, we are not convinced she could acquire a larger ownership interest through this reservation/exception language. That is, even if, for the sake of argument, she may have effectively retained her dower interest with respect to the mineral interests Dr. Poff reserved in the 1973 deed, she did not thereby gain more than she had originally. She did not gain a vested fee simple property interest through the 1973 deed's reservation/exception of mineral rights "they may own." The language of the 1973 deed itself simply does not support that position. Consequently, we find it unnecessary to address the Poff children's arguments concerning the "stranger to title" doctrine and whether it should apply to spousal deed reservations in Arkansas.

As part of their 1980 divorce, Lou Veta and Dr. Poff entered the property-settlement agreement, which contained the following pertinent language: "[Dr. Poff] is to own in his own right that personal property and real estate now owned by him and in his possession, and [Lou Veta] is to own in her own right that personal property and real estate now owned by her and in her possession." As noted earlier, both Lou Veta and Dr. Poff are deceased. Consequently, regardless of whether Lou Veta successfully reserved her inchoate dower

interest in the minerals with the 1973 deed, and regardless of whether she retained those interests via the 1980 property-settlement agreement, her life estate in those minerals had to end with her death in 1989, and, as discussed above, she never acquired a fee simple interest in the minerals that could have passed to the Poff children as part of her estate.

The above-quoted paragraphs 17–27 of the trial court's findings of fact recount the litigation history between these parties. In addition, paragraphs 2–5 in the trial court's conclusions of law explain,

2. The Peedin Defendants have properly pled estoppel and res judicata as affirmative defenses to the claims of the Poff Children. (See Ark. R. Civ. P. 8.)

3. The 2007 quiet title suit filed by the Poff Children against Carolyn Poff Peedin resulted in a judgment on the merits. That lawsuit was based on proper jurisdiction and was fully contested in good faith. Both the 2007 quiet title suit and the present litigation involve the same claim or cause of action; the Poff Children's claim to mineral interests through Lou Veta Poff could have been litigated in the 2007 quiet title suit. Both the 2007 quiet title suit and the present litigation involve the same parties or their privies. Based on the foregoing, the Poff Children are estopped from pursuing an ownership interest in the subject mineral interests under the doctrines of res judicata and collateral estoppel. (See *Morgan v. Turner*, 2010 Ark. 245 (2010).)

4. In the present suit and the 2007 quiet title suit, the Poff Children sought a determination as to the ownership of the subject mineral interests. That issue was litigated and determined by a final judgment in the 2007 suit and subsequent appeal. The identity of the mineral interest at issue was an essential fact to the determination of their ownership. The Poff Children's claims are now barred by the doctrine of collateral estoppel. (See *Morgan v. Turner*, 2010 Ark. 245 (2010).)

5. The Poff Children litigated the ownership of the subject minerals from trial through appeal under the theory that their father owned all of the excepted minerals, a ¼ interest. The representations made by the Poff Children to the Cleburne County Circuit Court and the Arkansas appellate courts regarding their father's ownership of the subject mineral interests constitute judicial admissions by the Poff Children. Based on those admissions and the doctrines of judicial estoppel and equitable estoppel, they are now barred from pursuing ownership of those same minerals under the theory that their father only owned one-eighth (1/8) and their

mother owned (1/8). (See *Dupwe v. Wallace*, 140 S.W.3d 464 (Ark. 2004); Trial Exhibits 26, 27, 28, 37, 38, 39, and 40.)

With this background, we explain why we also disagree with the Poff children's position that the trial court erred in concluding they were estopped from claiming ownership of the mineral interests based on the previous lawsuit regarding Dr. Poff's interest in the mineral rights.

Res judicata encompasses at least two distinct facets, issue preclusion and claim preclusion. *Bailey v. Harris Brake Fire Prot. Dist.*, 287 Ark. 268, 697 S.W.2d 916 (1985). Although the trial court found several estoppel bases for its decision, we need discuss only the claim-preclusion facet of the doctrine of res judicata. This facet bars the relitigation of a subsequent lawsuit when 1) the first suit resulted in a final judgment on the merits, 2) the first suit was based upon proper jurisdiction, 3) the first suit was fully contested in good faith, 4) both suits involve the same claim or cause of action, and 5) both suits involve the same parties or their privies. *Id*. Moreover, claim preclusion bars not only the relitigation of issues which were actually litigated in the first suit, but also those which could have been litigated but were not. *Id*.

Here, despite the 1996 family-settlement agreement, the Poff children filed a quiet-title action against Carolyn in 2007. It resulted in a judgment on the merits. Jurisdiction was proper, and that lawsuit was fully contested in good faith. As previously discussed, we agree with the trial court that the same underlying mineral interests were involved in both actions, and Lou Veta had no ownership interest in the subject minerals. Consequently, the 2007 quiet-title action and the current litigation involve the same claim or cause of action, and the current claim of the Poff children to mineral interests through Lou Veta could have

been litigated in the 2007 quiet-title action but it was not. Both the 2007 quiet-title action and the current litigation involve the same parties or their privies. We have extensively discussed the litigation history between these parties and our agreement with the trial court's conclusion that Lou Veta owned no interest in the subject minerals. This was done in order to give full context to the issues raised in this appeal. The time to assert claims that Lou Veta did have an ownership interest was when the quiet-title action involving those mineral interests was being litigated in 2007. The Poff children did not raise the issue in that lawsuit, even though it could have been litigated at that time. Consequently, we further agree with the trial court's conclusion that the doctrine of res judicata bars them from litigating those claims now.

For their final point of appeal, the Poff children contend we should reverse the $5,000 attorney's fee awarded to Carolyn because a justiciable controversy exists, and there was no finding or evidence of bad faith. We disagree.

Arkansas Code Annotated section 16-22-309 (Repl. 1999) provides in part,

> (a)(1) In any civil action in which the court having jurisdiction finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party or his attorney, the court shall award an attorney's fee in an amount not to exceed five thousand dollars ($5,000), . . . .
>
> . . . .
>
> (b) In order to find an action, claim, setoff, counterclaim, or defense to be lacking a justiciable issue of law or fact, the court must find that the action, claim, setoff, counterclaim, or defense was commenced, used, or continued in bad faith solely for purposes of harassing or maliciously injuring another or delaying adjudication without just cause or that the party or the party's attorney knew, or should have known, that the action, claim, setoff, counterclaim, or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law.

. . . .

(d)  On appeal, the question as to whether there was a complete absence of a justiciable issue shall be determined de novo on the record of the trial court alone.

We have previously recounted the context of this case in great detail.  Our de novo review of the record of the trial court convinces us the award of attorney's fees in this case was justified.

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*Kutak Rock LLP*, by: *Jess Askew III* and *Samantha B. Leflar*, for appellants.

*Gammill & Gammill*, by: *Randall L. Gammill*; *Dunn, Nutter & Morgan, LLP*, by: *Charles A. Morgan* and *M. Wade Kimmel*; *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*; and *Maureen H. Harrod*, for appellees.